Brumbalo vs. Baxter.

RICHARD ROE, casual ejector, and CALVIN BRUMBALO, tenant, plaintiffs in error, vs. JOHN DOE, ex dem. ELI H. BAXTER, defendant in error.

1. A defendant in ejectment may defeat a recovery against him, by showing a paramount outstanding title to the premises in a third person.

Ejectment. In Whitfield Superior Court. Tried at the April Term, 1861, before JAMES MILNER, Esq., an attorney at law, who, by consent of the parties, exercised the functions of Judge in said case, his Honor Judge Walker, having been of counsel in the case, and therefore incompetent to preside therein.

This was an action instituted in the name of John Doe, on the demise of Eli H. Baxter, against Richard Roe, casual ejector, and Calvin Brumbalo, tenant in possession, for the recovery of lot of land Number 97, in the 13th district of the 3d section of Whitfield county.

All the facts necessary to a clear understanding of the questions made and decided in the case, are stated in the opinion of the Court, delivered by Mr. Justice JENKINS.

L. W. CROOK, W. K. MOORE, for plaintiff in error.

A. J. HANSELL, contra.

By the Court—JENKINS, J. delivering the opinion.

In this case, the presiding Judge in the Court below instructed the jury that, under the facts presented by the evidence, the plaintiff was entitled to recover. We have now to inquire whether or not that instruction was right. On the trial there were three distinct titles before the Court. Each of these titles was traced upward to Thomas Glascock, to whom, by regular chain, the title descended from the State of Georgia. The question to be considered is, whether the plaintiff, the defendant, or one James Morris, (not a party or privy to this case,) legally derived title from Glascock.

VOL. XXXIII—6.

The plaintiff, below, relied upon a deed from Glascock to himself, executed 15th November, 1837, and recorded.

The defendant, below, put in evidence a bill in Chancery, filed by a creditor of Glascock against his administrator, alleging that Glascock died insolvent, and that the complainant's claim was a preferred one in law; and prayed an injunction, which was granted on the 4th December, 1841, restraining his administrator, the sheriff, and all judgment creditors from selling the property whereof he died seized and possessed, until the final or some interlocutory decree in that case. Complainant, in that bill, also prayed the appointment of a Receiver, and asked an interlocutory decree, authorizing and requiring the Receiver to sell all the property thus placed under injunction, and bring the proceeds thereof into Court, to be disposed of by final decree, all of which was granted.

There was attached to said bill in Chancery, no schedule of property subject to injunction, nor was the particular parcel of land now in dispute mentioned. The description given of the property held by Glascock at the time of his death, was very general. The Receiver under this interlocutory decree sold the lot in dispute, and Walker and Bradford, under whom defendant below holds, became the purchasers.

But defendant did not rest his case here. He put in evidence a judgment and execution, obtained by George W. Crawford, one of the creditors enjoined, against Thomas Glascock, on the 17th of April, 1835. Pending the proceeding in Chancery, and after injunction granted, it appears that Crawford's execution was levied upon this land, and a sale made by the sheriff, at which one Morris became the purchaser, and received a sheriff's deed for the land, which was also put in evidence. Thus it appears that the defendant below and plaintiff in error relied first upon his own title, derived through the Receiver, in equity; and secondly, upon the deed to Morris, showing title out of the plaintiff below and defendant in error. Under this state of facts, Baxter, the defendant in error, has to compete with two distinct titles, and must fail in his action if either of the two be superior to his. How does he compete with the title of plaintiff in error?

Brumbalo *vs.* Baxter.

We think successfully, because the title having passed from Glascock to him, during the life of the latter, this parcel of land did not remain, to be administered after his death, either by the officer of the Ordinary, or the officer of the Chancery.

Therefore, had the plaintiff in error rested upon his own title, in the Court below, the defendant in error would have been entitled to recover. But he availed himself of his legal privilege of showing title out of the plaintiff in the action, and this he attempted by adducing the title of Morris. 2d. We have now to inquire into the result of the competition between the title of the defendant in error, and that of Morris.

The judgment of Crawford, under which Morris purchased, is older than the deed from Glascock to the defendant in error, and constituted a subsisting lien upon the land, when that deed was executed. The title, therefore, passed from Glascock to Baxter, subject to this lien, in the regular process of enforcing which Morris acquired title. Baxter can no more hold against Morris's deed than he could against Crawford's lien.

The one rests upon the other. Had Crawford's judgment been otherwise satisfied, Baxter's title would have been good. But it was, in fact, satisfied by the sale of this land, and at that sale Morris purchased. He, therefore, acquired all the title which Glascock had when Crawford's judgment was rendered. But, it is said, the evidence discloses the fact that the levy on this land, and the sale of it, was made whilst the injunction rested upon the judgment and execution, and was, therefore, illegal, and passed no title to the purchaser.

It is true that this judgment and *fi. fa.* were enjoined, but to what extent? Not specially from selling this particular tract of land, for that is not mentioned; but generally from " *selling, or causing to be made any sale of any lands and tenements, or any negro slaves, * * * * which belonged to the estate of Thomas Glascock.*" Now, this injunction clearly applies to lands and tenements, and negro slaves, which belonged to Thomas Glascock at the time of his death, and constituted his estate to be administered. Only against such property could the claimants enforce their claim; only

against such did they ask an injunction, and by the *terms* of the writ, only against such did the injunction issue. But this property had been sold by Glascock, to the defendants in error, during his life, and was no part of the estate left by him to be administered. It was not, therefore, within the injunction. By seizing in execution and selling this property, Crawford appropriated to the satisfaction of the judgment nothing which would have been applied to the complainant's claim. Such application Baxter could have resisted successfully, though he could not have resisted Crawford's lien. The Receiver's sale, made in ignorance of the facts, was illegal. The sale under Crawford's judgment was not in disobedience to the writ of injuction, and was, for aught that appears, entirely legal. Had he been specially enjoined not to sell this particular tract of land, (though erroneously,) a sale, pending the injunction, might have been illegal.

What we now hold is, that this land is not included in the descriptive terms of the injunction, and was not, for that reason, covered by it. It is attempted to involve this Court in a dilemma by referring to the case of Morris vs. Bradford and Walker, 19 Ga., 527. The tract of land involved in the case at bar, was the subject matter of that action. The titles of Morris and of Bradford and Walker, appearing in the record, were before the Court in that case. The title of Baxter was not in that record, nor does it appear that anything was known of it. The Court held, in that case, that the sale under Crawford's judgment was illegal, because the evidence showed title in Glascock, as it does here; but did not show, as is shown in this case, that the title had passed out of Glascock, during his life. The evidence, there, showed that this tract of land was a part of the real estate owned by Glascock at his death, and brought it within the terms of the injunction. The evidence, here, shows that it was not a part of the real estate owned by Glascock at his death, and takes it out of the terms of the injunction. The judgment of a Court should be a conclusion of law upon a given state of facts. In that case, this Court concluded upon the facts appearing in the record, that the sheriff's sale at which Morris pur-

chased was illegal. In this case, we conclude upon the same *and additional* facts, that that sale was legal. It was Morris's misfortune that he did not bring to the knowledge of the Court the very important fact that Glascock had, during his life, aliened this land, subject to Crawford's judgment. It is the defendant in error who is in a dilemma. He can overcome the title of Morris only by showing that the sale under Crawford's judgment was illegal, because violative of the injunction. To do this, he must establish the fact that the title was in Glascock at his death. But whenever he shall do that, he will put himself out of Court, for it. is not pretended that he has acquired title since the death of Glascock. Believing that the instruction given by the Court below to the jury was erroneous, we reverse the judgment, and return the case for a rehearing.

Let the judgment be reversed.