J. A. R. HANKS, *administrator*, plaintiff in error, *vs*. JOHN PHILLIPS *et al*., defendants in error.

1. In an issue formed to try the genuineness of a recorded deed proposed to be read in evidence, to repel which the opposite party had made the affidavit required by section 2674 of the Code, the burden of proof is upon the party asserting the genuineness of the deed, and the fact that it is recorded does not change the *onus*.

2. Recitals in a private deed only bind parties and privies, and are not evidence against one not claiming under the deed.

3. If evidence of paper title is permitted to go to the jury, without objection to the proof of execution, it is too late, after verdict, to make the exception.

4. If one have written evidence of a title to a tract of land, and by a tenant take actual possession and afterwards sell, by written agreement, one undivided half of the premises to the tenant, who keeps possession for seven years, in his own right, for one undivided half, and as tenant of his vendor for the other half, this is adverse possession, under written evidence of title to the whole lot.

Ejectment. Tried before Judge PARROTT. Murray Superior Court. March Term, 1869.

This was ejectment for land lot 187 in the 8th district and 3d section of Murray county, upon the several demises of Asa Adams, John Phillips, *et al*.; against Amos Bishop and James A. R. Hanks, as administrator of Edward M. Galt, It was brought on the 27th of March, 1866.

The defendants were shown to have been in possession of the premises when the action was commenced, and the annual value of the premises was shown. The title produced by plaintiff was a grant of the lot from the State to Asa Adams, a deed from Adams, dated 23d of January, 1834, (and recorded on the 1st of October, 1866,) to William C. Phillips for one undivided half of the lot, a deed from Adams to John Williamson, dated the 2d of January, 1835, recorded 10th of January, 1858, for one undivided half of said lot, a deed from John Williamson to John Phillips, Anthony Phillips, John Warnock and Asa Adams, dated the 15th of June, 1850, recorded 1st of October, 1866, for half the lot, a deed from Anthony Phillips, Patrick Phillips, John Warnock and

Asa Adams, called in the deed the heirs of Wm. C. Phillips, deceased, to John Phillips for one half of said lot, recorded the 22d of November, 1857. The plaintiff closed.

The defendant introduced J. A. R. Hanks, who stated facts to show the loss of a deed to Galt, his intestate. AMOS BISHOP testified, that he held one half of the lot as his own, and the other as the tenant of Galt, and that his improvements were worth as much as the rent during his occupancy; that he had been in possession ever since December, 1856, claiming it as aforesaid. He further stated that Galt had a deed for the lot from Asa Adams, of Montgomery county, to Richard S. Smith, of Troup county, dated about 1833 or 1834; that it had three witnesses, one of whom was a magistrate. The defendants' attorneys then read in evidence a certified copy of the last mentioned deed. Thereupon, Asa Adams filed an affidavit, that said deed was a forgery, and said deed was then withdrawn. Bishop further testified, that Galt also had a deed from said Smith to William F. Tapp, and one from Tapp to himself, for all of said lot; each deed was in the usual form, had three witnesses, and were dated before he, Bishop, took possession. He produced a bond for titles for an undivided half of the lot, given to him by Galt in the spring of 1857, and a note given by himself to Galt for one fourth of said lot. Neither the bond nor note had any date; the note was for $150 00, payable in "insolvent notes?" including some he held on Galt.

When Adams made affidavit that said deed to Smith was a forgery, the Court arrested the cause and required an issue to be joined and tried as to its genuineness, and ruled that the *onus* was on the defendant to show that it was genuine, and that he must introduce other evidence besides the record to prove that fact. The defendant had no other evidence of its genuineness, and therefore withdrew that deed as aforesaid.

The evidence being closed, the Court charged the jury among other things, 1st. That if the plaintiff admitted W. C. Phillips' was dead, and the deed showed title in him for one half of the lot, and there was no evidence that the plaintiffs were his heirs, plaintiffs could not recover, because the

recital in the deed that they were such heirs was not sufficient evidence of that fact. 2d. That while Bishop's possession might be sufficient to give him a title by prescription to one undivided half of the lot, yet it was not such a possession as would protect Galt's estate, and that the jury might find one undivided half, or fourth, against Hanks as administrator of Galt. The jury found against Hanks, administrator, for one half, and in favor of Bishop for the other half of the lot, and costs, without mesne profits.

Hanks, administrator, moved for a new trial, upon the grounds that the verdict was against the evidence, etc., and contrary to the first clause of said charge, and because the Court erred in the second clause of said charge.

The Court refused a new trial and that is assigned as error.

D. A. WALKER, J. A. R. HANKS, for plaintiff in error.

W. LUFFMAN, for defendants in error.

McCAY, J.

1st. The provision in the Code, section 2670, is upon its very face, intended to qualify the ordinary effect of registry. The clause reads: "A registered deed shall be admitted in evidence in any Court in this State without further proof, *unless* the maker," etc. It would be a strange construction of the law to hold, that nevertheless, on the trial of the issue thus made up, the deed shall still be considered *prima facie* proven. As it seems to us, the leading intent of the provision is simply to do away with the effect of the registry by the affidavit of the maker, or his heir, or the party, leaving the genuineness of the deed to be proven as on other papers not required by law to be registered.

2. The plaintiff below having shown title to one half the land in William C. Phillips, (who it is admitted was dead at the trial,) cannot show title out of William C. Phillips by the mere production of a deed from certain persons claiming to be his heirs; it must be proven that these persons were his heirs, and the recital in the deed is no proof, unless it be

against a party claiming under the deed. This is nothing but common sense. Anybody might make a deed reciting the same heirship. If the defendant claimed under the deed the same rule of common sense would say he could not claim under it and deny it at the same time. The Court properly charged the law on this point, and we do not see how the verdict can stand. William C. Phillips being dead, the recovery cannot be in his name, and there is no connection proven between him and any of the plaintiffs, as to one half of the land. Adams' title passed out of himself to the whole lot, one half going to Williamson and one half to William C. Phillips, so that he can recover nothing. If, as seems to be admitted, it was the intent of the jury to find in favor of Bishop on the Statute of Limitations, then the verdict is wrong, for without the proof of the heirship to William C. Phillips, the plaintiffs only showed title to one half the land.

3 and 4. But we think the Court and jury both wrong as to the statute of limitations in favor of Hanks, administrator of Galt. There is no point made on the proof of Galt's deeds, and we do not inquire if there was sufficient proof of their existence and loss. It was before the jury that Galt had paper title to the whole lot. Bishop went in at first as Galt's tenant, he afterwards bought from Galt one *undivided* half, and he testifies, that, after the purchase, he had possession of the whole lot, one half as his own and one half as tenant for Galt.

There was no division of the lot. If Bishop was in possession of any, he was of all. He held the one undivided half of the whole. He held adversely to the plaintiffs; he held as the tenant-in-common with Galt. In fact, he was Galt's tenant as to the one half he claimed as his own, for the title was yet in Galt. The true owners looking after their land would have found Bishop in possession, claiming one undivided half under a bond for titles from Galt.

We think Galt's estate stands on the same footing with Bishop's, if it be made out that Galt had color of title, and the Court ought to have granted a new trial.