## JENKINS *v.* SOUTHERN RAILWAY COMPANY.

1. Even if, in order to invest an infant of tender years with the title to land, it may not be absolutely essential that there should be in every instance a manual delivery to such infant himself, or to a third person as his agent, of a voluntary conveyance in which he is named as grantee, yet no effect can be given to an instrument of that character which the maker thereof, after signing and acknowledging in the presence of witnesses, retains in his own custody, in the absence of satisfactory proof that it was his intention that such instrument should operate to immediately convey to the infant grantee the legal title to the premises therein described. In the case at bar, the charge of the court upon this subject was certainly as favorable to the plaintiff as he had any right to expect; and, under the facts and circumstances disclosed by the evidence, a finding in favor of the opposite party was fully warranted.

2. The doctrine that recitals in a deed are binding upon the parties thereto and their privies has no application whatsoever to the facts of the present case,. and accordingly can not be invoked to overcome the defendant company's defense that it held under a third person who, subsequently to the execution of the voluntary deed relied on by the plaintiff, in good faith and without notice thereof bought the premises from his grantor, and therefore acquired all the rights of a bona fide purchaser for value.

3. As has been repeatedly ruled by this court, to defeat a plaintiff in ejectment, the defendant need only show a paramount title outstanding in a third person, without going further and connecting his own possession with that title.

Argued June 10,—Decided November 1, 1899.

Complaint for land. Before Judge Kimsey. Habersham superior court. November 15, 1898.

*W. I. Pike, J. J. Strickland, Oscar Brown,* and *A. P. Wofford,* for plaintiff. *Dorsey, Brewster & Howell, Sanders McDaniel, Arthur Heyman,* and *J. J. Bowden,* for defendant.

FISH, J. 1. The plaintiff in this case, J. H. Jenkins, based his claim of title to the premises in dispute upon a deed of gift to himself and his mother, alleged to have been duly executed by his grandsire, Noah Ballew, in 1868. At that time the plaintiff was an infant about two years of age. It was shown on the trial that this deed had never been recorded and was lost or destroyed. The plaintiff's mother, who appeared as a witness, testified as to its contents, however, and swore unequivocally that the grantor had formally delivered the deed to her in person, and she had "kept it for several months, prob-

ably a year." On the other hand, Ballew, who testified in behalf of both the plaintiff and the defendant, denied most positively that there had ever been any delivery, either actual or constructive, to the plaintiff, and gave the following account concerning the matter: He procured a justice of the peace to draw up the instrument in question, and signed the same in the presence of two witnesses, but retained it in his possession. Shortly thereafter, with the intention "that it should operate and enure as a muniment of title to [his] daughter and grandson," Ballew tendered this instrument to his son-in-law, Pick Jenkins, the father of the plaintiff. Jenkins, however, declined to accept the same, telling Ballew "to keep it." The latter, having gained the impression from the manner of Jenkins's refusal to accept the deed "that he thought it was not worth anything and did not want it," thereupon placed the same among his other private papers and retained custody of it until some time during the year 1888, when it was either lost or stolen. No further attempt was made by Ballew to effectuate his intention of making a formal delivery of the instrument. On the contrary, in 1873 he sold the premises to one Morton, having in the meantime decided "to give [his daughter] and her son another piece of land in lieu of the land in question." He accordingly gave them a larger tract of land in the upper part of the county, to which place Jenkins removed his family, abandoning possession of the premises in dispute, upon which he had resided both before and after the signing of the instrument above referred to. Upon this branch of the case, the trial judge charged the jury: "If the grantor, at the time of the execution of the deed, had the determination to deliver it, and although he may have declared before the witnesses that this was his purpose, and then attempted to deliver it to the grantee, or some one for him, and failed to deliver it for or on acount of the failure of the one to whom presented to accept it on any account, and then changed his purpose as to the delivery of the deed, this would not be a good delivery." "The grantee need not be present at the time to accept it, and it need not be delivered to the infant, but may be delivered to some one for it, or kept and held by the grantor for such infant, if that was

his intention to pass title to such infant, and finally at the proper time to pass the deed to him, unless this intention was abandoned. How did the grantor regard it? Did he attempt to deliver it and failed, and then abandoned that intention and regarded it as his and treated it as such? If so, there would be no delivery."

Exception is taken to this portion of the court's charge,. for the reason, as contended by the plaintiff, "that the rule announced, while applicable to adults, is not applicable to minors, when an offer has been made to deliver for his benefit." We are aware that, with a view to jealously guarding the rights of infants, in some jurisdictions the courts have gone to the extent of giving effect to a deed of gift made in behalf of one of tender years, although it appeared there had been no "manual delivery at all, the grantor retaining the deed among his own papers." See 1 Dembitz on Land Titles, § 51. But it is to be observed that in every case where such an instrument has been upheld, notwithstanding the grantor did not actually part with its custody, the courts have justified their position upon the ground that the peculiar facts and circumstances brought to light disclosed an intention on his part to make a final disposition of the property named in the instrument. Thus, in Newton v. Bealer, 41 Iowa, 334, wherein it appeared that "a father had executed a conveyance of realty to his infant son, but had retained the deed in his possession, and had in various ways indicated his intention that the property in question should be thus bestowed at his death, it was held that effect should be given to this intention," after his decease, the court saying (page 339): "Where one who has the mental power to alter his intention, and the physical power to destroy a deed ·in his possession, dies without doing either, there is, it seems to us, but little reason for saying that his deed shall be inoperative, simply because during life he might have done that which he ·did not do." Again, in Colee v. Colee, 122 Ind. 109, 17 Am. St. Rep. 345 (a case upon which the plaintiff in error mainly relies),.it was disclosed by the evidence that "A wife, for the purpose of putting land beyond the reach of her husband, signed and acknowledged a deed in· which the land was con-

veyed to her children, all of whom but one were infants." She thereafter "caused it to be recorded, and then took possession of it, intending to retain the deed and the land in her possession until her death." It further appeared that "by the terms of the deed she reserved to herself a life-estate in the land," so her retention of the instrument was not at all inconsistent with the idea that she intended that it should immediately take effect as a conveyance. Accordingly it was held that "The making of a voluntary conveyance, absolute in form and beneficial in effect, by a father or mother to one who is not sui juris, and placing it upon record, is deemed to evince an unmistakable intention on the part of the grantor to give the deed effect and pass the title to the grantee, the assent of the latter, if nothing further appears, being presumed from the beneficial character of the transaction."

In the present case, aside from the signing and acknowledgment of the instrument in the presence of witnesses, the only evidence of the intention of Ballew at all contradictory to what he swore as a witness was proof of certain declarations alleged to have been made by him to the effect that he had given the land in controversy to his daughter and her minor son. The instrument was never recorded, nor did the grantor named therein evince an intention to become the custodian of it until the infant became of age, otherwise than by preserving the same. The plaintiff attained his majority on September 7, 1887, yet, although Ballew remained in life and then retained the paper in his custody, he made no attempt or offer to deliver it. On the contrary he had, some fourteen years previously, apparently abandoned entirely his intention of making the gift and had sold the land to another person, at the same time deeding to the plaintiff and his mother a larger tract located elsewhere in the county. Clearly, therefore, were an adult named in the instrument as grantee, it could not properly be given the effect of a conveyance duly delivered. See *Maddox* v. *Gray*, 75 *Ga.* 452, and *Ross* v. *Campbell*, 73 *Ga.* 309. The mere fact that the plaintiff was an infant of tender years at the time of the signing of the paper in question can not, it would seem, supply the place of satisfactory evidence that his grandsire in-

tended this instrument to immediately operate as a.conveyance. Nevertheless, as has been seen, the trial judge fairly submitted to the jury the question whether or not, although Ballew retained the paper in his own custody, he really intended that it should forthwith operate to pass title to the plaintiff. Certainly the charge excepted to was as favorable to him as he had any right to expect. The circumstance that Ballew formally offered and tendered the instrument to the plaintiff's father, to be accepted in behalf of the grantees therein named, counts for nothing in the plaintiff's favor, for his father expressly declined to accept this proffered delivery. In this connection see *Beardsley* v. *Hilson*, 94 *Ga.* 52–54. Indeed, this circumstance would seem to indicate that Ballew never originally contemplated becoming himself the custodian of the instrument, treating himself as the trustee of the plaintiff to hold in the latter's behalf the evidence of an executed gift, but rather that Ballew, after signing the paper, still considered it as belonging absolutely to himself, and expected thereafter to finally put into effect his intention to bestow upon the plaintiff the proposed gift by selecting for him an agent to accept, in his behalf, a written conveyance thereof. If this was really Ballew's intention, he clearly was at liberty to abandon it at any time before it was fully executed, and Jenkins's refusal to accept the tender made to him left Ballew precisely in the situation he occupied prior to making the offer, i. e., the position of one who, having parted with nothing, may or may not, at his option, take further steps to carry into effect his benevolent purpose of bestowing upon another a voluntary gift. We may add, before concluding this branch of the discussion, that we are entirely satisfied with the finding returned by the jury, even though, as may be true, they based their verdict solely upon the conclusion that there had not been either an actual or a constructive delivery of the instrument upon which the plaintiff relied as a muniment of title. There was, however, as we will now undertake to show, another view of the case upon which the jury might very properly have predicated their finding against him.

2. Evidence was introduced in behalf of the defendant railway company affirmatively showing that Morton, to whom

Ballew sold the land in 1873, was an innocent purchaser for value, without notice of the alleged unrecorded deed of gift previously executed in favor of the plaintiff.  He sought to overcome the defense thus interposed, by testimony to the effect that Morton had fraudulently procured possession of his deed from Ballew, which had been delivered in escrow to a third person, without paying in full the purchase-price.  The issue of fact thus raised might, under the conflicting evidence bearing thereon, have been determined by the jury either way, but apparently the preponderance of proof, taken in connection with the circumstance that Ballew, so far as appears, never made any attempt to collect that portion of the purchase-price alleged to have been unpaid or to disturb Morton in his possession of the premises under his deed, constrained the jury to find, as they did, in favor of the defendant.  It does appear from the record before us that in a deed from Ballew to one Kimsey, "dated January, 1873, which deed was recorded in 1873," the grantor described the premises thereby conveyed as being "all the land of lot 149 except" some forty acres previously sold, and "also thirty-five acres, more or less, heretofore deeded to Jerusha Jenkins [the plaintiff's mother] and her heirs."  The deed from Ballew to Morton, the latter testified, was executed in the "summer of 1873."  No attempt appears to have been made to show that he had actual knowledge of the above recital in the deed to Kimsey, or that this deed was put on record before Morton purchased the premises in dispute; so the jury would not have been authorized to find that he had even constructive notice of the contents of that instrument. Nor, as is contended by the plaintiff in error, can the recitals therein be regarded as binding upon Morton and his privies in estate.  He certainly was not a party thereto, nor did he derive title thereunder, either directly or through the grantee therein named.  This being so, he would not, simply because his grantor was the same person who had previously executed that instrument, be estopped from denying the truth of the recitals therein contained.  "Recitals in a private deed only bind parties and privies, and are not evidence against one not claiming under the deed."  The doctrine that one asserting title

under a conveyance is estopped to deny the truth of its recitals is based upon the "rule of common sense" that he is not at liberty to "claim under it and deny it at the same time." *Hanks* v. *Phillips*, 39 *Ga.* 550, 553. To the same effect, see *Yahoola River Mining Co.* v. *Irby*, 40 *Ga.* 479, and *Cruger* v. *Tucker*, 69 *Ga.* 557, 562. Accordingly, it would be an unpardonable perversion of both law and justice to hold that, in a contest between the holder of an unrecorded deed of gift and one occupying the attitude of a subsequent bona fide purchaser for value and without notice of such voluntary conveyance, the doctrine of estoppel which the plaintiff in error seeks to invoke has any application whatsoever.

3. As to a portion of the premises in dispute, upon which were located certain tracks of the defendant company referred to by counsel as its "Y," the plaintiff in error concedes that it showed a regular chain of titles back to Morton. As to that portion traversed by its main line, however, the company failed to show title derived from any source. Counsel for the plaintiff accordingly insisted here that the trial judge committed grave error in his charge to the jury upon the law relating to the rights of innocent purchasers for value without notice of a prior voluntary conveyance, in that he did not limit the defense thus interposed by the company to that part of the land occupied by its "Y," but expressly instructed the jury, in effect, that the company could successfully defend the action by showing that Morton was a bona fide purchaser for value and therefore became invested with the paramount title to the land in controversy. This position is clearly untenable. "A defendant in ejectment may defeat a recovery against him by showing a paramount outstanding title to the premises in a third person." *Brumbalo* v. *Baxter*, 33 *Ga.* 81. And, to the same effect, see *Jones* v. *Sullivan*, Ibid. 486; *Roe* v. *Maund*, 48 *Ga.* 462; *McAlpin* v. *Lee*, 57 *Ga.* 282. It is not at all necessary that the defendant should introduce evidence "connecting his possession with that title." *Sutton* v. *McLeod*, 29 *Ga.* 589. For, as was pertinently remarked by Judge Lumpkin in the case last cited (page 594): "The possession of the defendant is a protection against all who seek to disturb it, until the true owner comes

to assert his right. To him the defendant is answerable for mesne profits. And it is enough for him to show that the party suing is not the true owner, but that the paramount title is outstanding in another. This principle is hoary with age. We bow to it reverently." It follows, necessarily, that there is no merit in the additional complaint of the plaintiff in error that, notwithstanding the defendant company signally failed to prove it had any interest whatever in that portion of the premises over and along which its main line of railway extended, the trial court charged the jury, in substance, that it was incumbent upon the plaintiff, in order to make out a case entitling him to a recovery, to establish by proof his alleged title as to the entire tract of land in controversy.

*Judgment affirmed.   All the Justices concurring.*