## LANIER, HAMILTON & COMPANY *v.* HEBARD *et al.*

1. A power of attorney authorizing a designated person, as attorney in fact, to sell and convey all the lands, situated in the State of Georgia, belonging to the donors of the power, or in which they have any interest, or any part of such lands, is not inadmissible in evidence because it fails to describe the lands "by county, number, or district."

2. Upon the interlocutory hearing of an application for injunction, brought under the Civil Code § 4927, it is not erroneous to admit in evidence a paper offered by the plaintiff as a link in his chain of title, and objected to as being irrelevant, although at the time such paper is offered in evidence it does not appear to be admissible as such, if its admissibility depends upon facts which it is competent to establish by subsequent evidence. But such paper should only be admitted subject to the objection made; and if evidence showing its relevancy to the issue on trial is not afterwards introduced, it should be either expressly ruled out or treated by the judge as of no probative value.

3. Recitals in an ancient deed, wherein the party executing it purports to convey the property for himself and, as attorney in fact, for others as the heirs at law of a former owner, that such former owner is dead and the grantors are such heirs, unsupported by other evidence showing the relationship of the party making such recitals to the person whose heirs at law the grantors are in the writing claimed to be, or by proof of uninterrupted possession, under such deed, for such length of time as to raise a presumption that such recitals are true, are not sufficient to prove the facts so recited.

4. As the plaintiffs not only failed to prove the perfect paper title contemplated by the Civil Code § 4927, but also failed to prove any title at all to the premises in controversy, they were not entitled to an injunction, even if they showed that the threatened damage would be irreparable, or that the grant of the writ would prevent a multiplicity of suits.

Argued June 21,— Decided August 2, 1905.

Injunction.    Before Judge Parker.    Clinch superior court. January 30, 1905.

Charles S. Hebard and others filed an equitable petition against I. G. Lanier, C. T. Hamilton, and Daniel J. Guy, partners under the name of Lanier, Hamilton & Company, to enjoin the defend-

ants from working for turpentine purposes trees on lots of land numbers 328 and 329 in the 12th district of Ware county. The plaintiffs sought to bring their case within the scope of section 4927 of the Civil Code, which relieves an applicant for injunction, in a case of this character, of the necessity of averring and proving insolvency of the defendant, or that the threatened damages would be irreparable, or other circumstances rendering the issuance of the writ of injunction necessary and proper, by attaching to their petition an abstract of title, claimed to be a "perfect title" to the land and the timber in question. This abstract was as follows: (1) Grants from the State to Benjamin G. Barker, dated July 8, 1858, to lots 328 and 329 in the 12th district of Appling county (but now of Ware county). (2) "Power of attorney, dated December 8th, 1871, from heirs at law of Benjamin G. Barker to William B. Van Benschoten, signed by John Van Benschoten, Edward Van Benschoten, Sarah Van Benschoten, Edwin Mills and Elizabeth Mills." (3) "Deed dated December 22nd, 1871, from William B. Van Benschoten under said power of attorney, for the heirs at law of said Benjamin G. Barker, to J. M. Stiger, conveying the lands in question and other lands. (4) Deed dated April 27th, 1901, from J. M. Stiger to R. R. Hopkins," conveying lands in question and other lands. (5) Deed dated July 17, 1902, from R. R. Hopkins to the plaintiffs, conveying the lots in controversy and other lands. The defendants were not alleged to be insolvent. There was an allegation to the effect that working the timber on the lands in question by defendants for turpentine purposes would cause irreparable damage to plaintiffs, for the reason that plaintiffs had purchased such lands, together with a large body of land known as the Okefenokee Swamp, for the purpose of manufacturing the timber thereon into lumber when they should see proper so to do; that such timber was very valuable and constituted the principal value of the land; that the working of the timber for turpentine purposes would cause it to be destroyed, and plaintiffs would be deprived of the profits they expected from its manufacture into lumber. It was further alleged that the acts of trespass complained of were continuing from day to day, and, unless defendants were enjoined, plaintiffs would be involved in a multiplicity of suits at law against defendants for the recovery of

damages. It was also alleged that defendants had cut, felled, hacked, and boxed ten thousand of the trees on the two lots of land, to plaintiffs' damage in the sum of three thousand dollars, for which a recovery was prayed. The defendants demurred to the petition, on the grounds that it set up "no reason in equity which [entitled] the plaintiffs to an injunction," and that the abstract of title attached to the petition did not authorize the. granting of an injunction, in the absence of insolvency of defendants or irreparable damage to plaintiffs. The defendants also answered, denying the material allegations of the petition.

On the interlocutory hearing the plaintiffs introduced the following evidence: Plats and grants from the State to Benjamin G. Barker, dated July 8, 1858. "A power of attorney dated November 6, 1871, from E. B. Scattergood, Theodore Scattergood, I. Scattergood, Robert Smith, Helen C. Smith, and Sarah Barker to William B. Van Benschoten, containing the following powers: 'to enter into and take possession of all real estate belonging to us or in which we or either of us have any interest, situated in the State of Georgia, and to bargain, sell, grant, convey, and confirm the whole or any part thereof for such price or sum of money, and on such terms, as he may think best, and to sell or exchange the same for other property as he may think best." (3) The power of attorney from John Van Benschoten et al. to William B. Van Benschoten, dated December 8, 1871, being the same as set out in the abstract of title attached to the petition, the powers delegated being the same as those in the power of attorney from Scattergood et al. to William B. Van Benschoten. (4) "A [warranty] deed from William B. Van Benschoten and Julia A. Van Benschoten, his wife, to J. M. Stiger, to which the said William B. Van Benschoten purported to sign for himself and as attorney in fact for the heirs of Benjamin G. Barker, executed on the 22nd day of December, 1871, and conveying, among a great many lots of land in various counties," the two lots of land in question, and reciting that the lands conveyed embraced "in all 21,560 acres, be the same more or less," and further reciting: "said premises having formerly belonged to the estate of Benjamin G. Barker, deceased, and are herewith conveyed and intended to be conveyed by the said William B. Van Benschoten in his own right and by several

powers of attorney, dated November the 6th, 1871, and 8th of December, 1871, so far as the rights of other heirs and representatives of said Benjamin G. Barker are or may be concerned." (5) A deed from J. M. Stiger to R. R. Hopkins, and a deed from R. R. Hopkins to the plaintiffs, to the lands in question and other lands. (6) Affidavit of J. M. Stiger, that he had purchased from William B. Van Benschoten, as attorney in fact for the heirs at law of Benjamin G. Barker, certain real estate, including the two lots of land in controversy; that he had remained in the uninterrupted, quiet, peaceable, adverse, and notorious possession of said two lots of land until he conveyed them to R. R. Hopkins; that his "ownership and possession of above lots extended over a period of twenty years; during all of this time [he] paid taxes levied upon and assessed against these two lots of land, and that during the last twenty years of [his] ownership [he] had houses, fences, and buildings and improvements upon certain of the lands described in the deed from William B. Van Benschoten to [him]; and that [his] acts of ownership and possession extended over and embraced all of said property described in this deed from William B. Van Benschoten to [him] during said period." (7) Affidavit of R. R. Hopkins, to the effect that the trespass complained of would be of irreparable injury to the plaintiffs, in the manner set out in the petition. (8) Affidavit of W. H. Mizell, that defendants had cut ten thousand of the trees standing on the two lots in question, to the injury of the plaintiffs in the sum of three thousand dollars. Defendants submitted in evidence the affidavits of several witnesses to the effect that defendants had not cut the boxes in the trees on the two lots in question, but had merely worked them by hacking the boxes and dipping the gum therefrom, and that this did not increase the damage already done by boxing the trees; and that the damage thus done the defendants was not irreparable, but of easy computation; and that neither J. M. Stiger nor any one claiming under or through him has ever been in possession of the two lots in controversy, or any land contiguous thereto, " by inclosures, cultivation, residence, tenants, or otherwise, or by working the timber for any purposes." They further deposed that the lands conveyed by Van Benschoten and wife to Stiger " do not constitute one body

and tract of land, and is not composed of entire adjacent or con-
tiguous lots or tracts, and that there are no improvements or
possession of any kind on said land."

The court granted an order enjoining defendants as prayed for,
until the final hearing.   To this order the defendants excepted.

*R. G. Dickerson* and *S. L. Drawdy*, for plaintiffs in error.
*Krauss & Shepard* and *Toomer & Reynolds*, contra.

FISH, P. J.   (After stating the facts.)   1. The defendants
objected to each of the powers of attorney to William B. Van
Benschoten, when it was offered in evidence, because it "failed to
describe the land described in plaintiffs' petition by county, num-
ber, or district;" and upon the further ground that it did not in
any way connect Benjamin G. Barker with the parties creating
the power of attorney, and no evidence was offered by the plain-
tiffs connecting such parties with Benjamin G. Barker and showing
that they were his heirs at law.   Another ground of objection
made was abandoned in this court.   There was no merit in the
first ground, as the power given covered all the real estate belong-
ing to the donors in this State, wherever situated.

2. The second ground of objection was meritorious, unless the
plaintiffs by subsequent evidence removed it; as, at the time the
objection was made, there was absolutely nothing in evidence
which tended to show that the parties executing either of these
papers had derived title in any way from Benjamin G. Barker, the
grantee of the State.   The plaintiffs sought to show that the
parties creating these powers of attorney were the heirs at law of
Benjamin G. Barker, by certain recitals contained in the deed
from William B. Van Benschoten and wife to J. M. Stiger, this
deed being more than thirty years old.   This was the next piece
of evidence introduced, the probative value of which will be con-
sidered later.   The judge was not bound to sustain the objection
to the powers of attorney at the time when it was made, especially
as the case was before him at chambers, but could properly admit
them, subject to be ruled out, unless their relevancy was shown
by subsequent evidence.   We shall presently come to the real,
substantial error which he committed, which renders the ruling
just discussed of but little or no importance and requires a rever-
sal of the case upon its merits.

3. We think it is clear that the plaintiffs failed to prove a perfect title as contemplated by the Civil Code, § 4927. To authorize the granting of an injunction under this section, "the plaintiff must show a perfect title upon the face of the papers presented by him and constituting his chain of title. If such papers do not show upon their face a perfect title, aliunde evidence will not be admitted to explain any defects in the title apparent upon the face of the papers," *Camp* v. *Dixon,* 111 *Ga.* 674, 676; *Wiggins* v. *Middleton,* 117 *Ga.* 162, and cit. Counsel for the plaintiffs contend that they did prove such perfect paper title by a chain of title from the State down to the plaintiffs, which they introduced in evidence. One link in this chain of title was the deed from William B. Van Benschoten and wife to J. M. Stiger, wherein said Van Benschoten purported to convey, for himself and for others, as heirs at law of Benjamin G. Barker, the lands in question to such grantee. This link was fatally defective, in that it was not shown that the parties for whom Van Benschoten undertook to convey the lands to Stiger were the heirs at law of Benjamin G. Barker. As we have intimated, counsel for the plaintiffs rely upon certain recitals in this deed to establish this fact. They insist that as the deed is an ancient one, the recitals therein are to be taken as true; and that these recitals, so considered, show that the persons in whose behalf the deed was made were the heirs at law of Benjamin G. Barker. The recitals relied on are as follows: "said premises having formerly belonged to the estate of Benjamin G. Barker, deceased, and are herewith conveyed and intended to be conveyed by the said William B. Van Benschoten in his own right and by several powers of attorney dated November 6th, 1871, and 8th of December, 1871, so far as the rights of other heirs and representatives of said Benjamin G. Barker are or may be concerned." It will be noted that it is only indirectly and inferentially declared here that William B. Van Benschoten is an heir at law of Benjamin G. Barker, and that who were the "other heirs and representatives of said Benjamin G. Barker," for whom he was acting, is not stated. It will be observed also that there is no direct and explicit statement that the makers of the deed are all the heirs at law of Benjamin G. Barker. Admitting, however, for the sake of the argument, that these recitals, taken in connection with the

two powers of attorney introduced in evidence, the dates of which, respectively, correspond with the dates of the powers of attorney here mentioned, can be considered as a declaration by William B. Van Benschoten that he and the parties signing such powers of attorney are the heirs at law of Benjamin G. Barker, is this declaration by him, when found in an ancient deed which he executed, sufficient, in and of itself, to prove that he and the other persons for whom he acted in executing the deed were the heirs at law of Benjamin G. Barker? We think not.

In *Dixon* v. *Monroe,* 112 *Ga.* 158, it was broadly held: "A recital in a deed that the parties making it are heirs at law of a former owner is no evidence of the fact, except as against parties to the deed and their privies." The same ruling was made in *Hanks* v. *Phillips,* 39 *Ga.* 550, and *Yahoola Co.* v. *Irby,* 40 *Ga.* 479. In none of these cases, however, was the deed containing the recital an ancient deed. In *Yahoola Co.* v. *Irby,* McCay, J., said: "We see no reason why the recital in a deed by John and Jacob Doe, that they are the heirs-at-law of William Doe, should be evidence of that fact. Any other two men might make a deed with the same recital in it, and there would be no reason why the recital in one of the deeds should be taken for true rather than in the other. To make out a title to land, all that would be necessary, if this were the law, would be to write a deed to it, setting forth that the maker of the deed was the heir-at-law of the true owner." Carver *v.* Astor, 4 Peters, 83, was cited, wherein it was held that the general rule is, "that a recital of one deed in another binds the parties and those who claim under them. Technically speaking, it operates as an estoppel, and binds parties and privies; privies in blood, privies in estate, and privies in law. But it does not bind mere strangers, or those who claim by title paramount to the deed. It does not bind persons claiming by an adverse title, or persons claiming from the parties, by title anterior to the date of the reciting deed. . . But there are cases in which such a recital may be used as evidence even against strangers. If, for instance, there be the recital of a lease, in a deed of release, and in a suit against a stranger the title under the release comes in question, there the recital of the lease, in such release, is not per se evidence of the existence of the lease. But if the existence and loss of the lease

be established by other evidence, there the recital is admissible as secondary proof, in the absence of more perfect evidence, to establish the contents of the lease; and if the transaction be an ancient one, and the possession has been long held under such release, and is not otherwise to be accounted for, there the recital will of itself, under such ·circumstances, materially fortify the presumption, from lapse of time and length of possession, of the original existence of the lease.    Leases, like other deeds and grants, may be presumed from long possession, which can not otherwise be explained; and under such circumstances, a recital of the fact of ·such a lease, in an old deed, is certainly far stronger presumptive proof in favor of such possession under title, than the naked presumption arising from a mere unexplained possession." It is somewhat significant that Judge McCay, though citing that case, did not except ancient deeds but announced the broad and unqualified rule that " a recital in a deed that the parties making it are heirs-at-law of a former owner is no evidence of the fact recited, except as against parties to the deed and 'their privies." And the reasons, above quoted, which he gave to sustain the ruling, are as applicable to a recital in an ancient deed as to one in a recent deed. In· a few courts a recital in an ancient deed of a pedigree of inheritance has been held admissible to show the state of the relationship; but the great weight of judicial authority is to the effect that before such a recital, even in an ancient deed, can be considered as evidence of relationship, possession of the premises under the deed, or other corroborative circumstances, must also appear.    2 Wigmore on Ev. § 1573 (3), and cases cited in note 7.

The rule, as we understand it to be established by the great weight of outside authority, is, that before the recitals in an ancient deed, of the death of the former owner and of the relationship of the grantor to him, can be taken as evidence of the facts recited, there must be evidence of the death of the person making the recital or declaration and that he was de jure related by blood or marriage to such former owner, or proof of undisturbed possession, under the deed, of the premises conveyed for such a length of time as to raise a presumption that such recitals in the deed are true.    While the rule seems generally recognized that in matters of pedigree the declarations of

deceased persons who were de jure related by blood or marriage to the family in question may be given in evidence, yet before such a declaration can be received in evidence the relationship of the person making it with the family must be established by some proof independent of the declaration itself. There is absolutely no evidence disclosed by the record in this case which shows that William B. Van Benschoten, who made the recitals in this deed, which are relied on by the plaintiffs, was dead when the case was tried. Nor is there any evidence, other than his own written declaration, that he was in any way related to Benjamin G. Barker. Therefore his written declaration, that he and the other persons for whom he acted were the heirs at law of said Barker, stands upon no higher footing than such a declaration made by one who was in no way related to Barker. This being true, it is unnecessary to inquire whether, if these facts had been shown, his declaration that the grantors were the heirs at law of Barker would have been admissible. In this connection we will, however, say that the declaration in question seems to be more the statement of a legal conclusion from facts undisclosed, than a statement of the real relationship of the grantors to Barker. There was no proof, as we will later show, that possession of the lots, or either of them, was held for any length of time under the deed to Stiger; and even if there had been proof of such possession of the lots, or either of them, for such length of time as to raise a presumption that the recital that the grantors were the heirs at law of Benjamin G. Barker was true, such proof would necessarily have had to be made by aliunde evidence, which, under the ruling in *Camp* v. *Dixon,* supra, would not be admissible for the purpose of bringing the plaintiffs' case within the provisions of the Civil Code, § 4927, as such evidence could not be received to explain defects in the title apparent upon the face of the papers. Our conclusion, therefore, is that the plaintiffs did not show the "perfect title" which will, under this section of the code, relieve an applicant for injunction from the necessity of averring and proving insolvency of the defendant, or that the threatened damage will be irreparable, or other circumstances rendering the interposition of the writ necessary and proper.

4. The plaintiffs not only failed to prove a perfect title, but

proved no title at all to the land or timber in question. While Stiger's affidavit was that he remained in the uninterrupted, quiet, peaceable, adverse, and notorious possession of lots 328 and 329 until he sold and conveyed the same to Hopkins, and his (Stiger's) ownership and possession of these lots extended over a period of twenty years, during all of which time he paid taxes on them, and that during the twenty years of his ownership he had houses, fences, buildings, and improvements placed upon certain of the lands described in the deed from William B. Van Benschoten to him, and that his acts of ownership and possession extended over and embraced all of the property described in this deed, it is very clear that he was only swearing to his own conclusion. The deed to him embraced some 21,560 acres of land, consisting of lots containing 490 acres each, and situated in as many as five different counties; and the payment of taxes on all of the lands embraced in the deed and the actual possession of one or more of the lots, other than 328 and 329 in Ware county or some one of the other lots which was contiguous to these, was not even constructive possession of such two lots. The undisputed evidence is that there was no actual possession of the two lots in question, or of any lot conveyed in the deed contiguous to these lots. It follows, therefore, that even if the threatened injuries would be irreparable or if the plaintiffs would be saved the necessity of a multiplicity of suits, they were not entitled to an injunction, because they failed to prove title to the land or timber in question.

*Judgment reversed. All the Justices concur, except Simmons, C. J., absent.*