## 24550. MARTIN *v.* McLAIN *et al.*

DECIDED APRIL 8, 1935. REHEARING DENIED JUNE 20, 1935.

*E. L. Smith,* for plaintiff. *R. R. Jones,* for defendants.

GUERRY, J. E. B. Martin sued certain named defendants, trading as the "McLain Estate," for the purchase-price of a certain peanut-threshing machine. He attached to his petition the order for this machine, signed "McLain Estate" by "G. K. McLain." He also attached to his petition an instrument which is materially as follows: "Know all men by these presents that we, Mrs. Ruby McLain Duggan and Miss Alma McLain, . . and J. P. McLain, . . and Mrs. G. D. Brim . . have constituted, made, and appointed, and by these presents do make, constitute, and appoint G. K. McLain our true and lawful attorney in fact, for us and in our name, place and stead, to do everything in connection

with the management and operation of the estate of J. J. McLain and Mrs. J. J. McLain, both deceased. . . We . . give the said G. K. McLain full power and authority . . to make all contracts in connection with the operation of said farm, sign any and all papers, notes, contracts, etc., touching the maintenance and operation of said estate, it being the purpose of this instrument to give to said G. K. McLain full authority to do any and all things in connection with said estates for us in as full and ample a manner as if the same was done by us, giving and granting unto G. K. McLain, attorney, full and whole power and authority in and about the premises; and generally to do and perform all and every act and acts, thing and things, device and devices, in law whatsoever, needful and necessary to be done in and about the premises, and for us in our name to do, execute, and perform as largely and employ, to all intents and purposes, as we might or could do if we were personally present, and an attorney or attorneys under us for the purpose aforesaid to make and substitute; hereby ratifying and confirming all that G. K. McLain, said attorney or substitute, shall lawfully do by virtue." This instrument was properly executed by the parties named therein and recorded. The demurrer to the petition, which was sustained by the trial judge, contends that the above power of attorney did not give to G. K. McLain power to purchase a threshing machine.

The petition further alleges: "That the defendants owned at the time of the purchase of said threshing machine described in Exhibit A, and also at the time of the execution of the power of attorney described in Exhibit B, a twelve-horse farm located in Terrell County, Georgia, and the defendants who executed said Exhibit B were the sisters and brother of the defendant, G. K. McLain, at the time of the purchase of said threshing machine was operating the said farm for himself and the other defendants, and had planted a large acreage, of approximately one hundred acres in peanuts, to be harvested during the fall of 1933, and it was necessary to the management and operation of said farm for the defendants to purchase a threshing machine to thresh said peanuts, not only for said year but for succeeding years thereafter. And not only is the defendant G. K. McLain liable for the purchase-price of said threshing machine, but, under the said power of attorney, the other defendants gave him such authority as contained therein,

so that they thereby also became liable for the purchase-price of said threshing machine."

The cardinal rule of construction of all contracts is to ascertain the intention of the parties thereto. Civil Code (1910), § 4266; *Mandeville Mills* v. *Milam*, 39 *Ga. App.* 768 (148 S. E. 418); *Ætna Life Insurance Co.* v. *Padgelt*, 49 *Ga. App.* 666 (176 S. E. 702). If the intention is clear, contravenes no rule of law, and sufficient words are used to arrive at that intention, it should prevail, "irrespective of all technical or arbitrary rules of construction." Civil Code (1910), § 4266. In arriving at the intention of the parties to an authorization, as in the present case, the instrument is subject to a strict construction. "A formal power of attorney, executed with deliberation, is subject to a strict construction. General terms in it are restricted to *consistency* with the *controlling purpose* [italics ours], and will not extend the authority so as to add new and distinct powers different from the special powers expressly delegated." *White* v. *Young*, 122 *Ga.* 830 (51 S. E. 28).

The power of attorney already quoted, besides giving G. K. McLain, in general terms, *management and control* of the estate, gives "the said G. K. McLain full power and authority . . *to make all contracts in connection with the operation of said farm,* sign any and all papers, notes, contracts, etc., touching the maintenance and operation of said estate." When this language is taken in connection with the allegations of the petition, which on demurrer are to be accepted as true, that at the time of the execution of the above authorization and at the time of the execution of the order for the threshing machine, the defendants owned and operated a farm of 12 plows, which was a part of the McLain estate, and had planted thereon approximately 100 acres of peanuts, and that in order to thresh them it was necessary to buy the machine, we can hardly see how better they could have conferred on G. K. McLain authority to buy the same, unless they had specifically stated in the authorization his authority to do this particular act. To give him such authority it was not necessary to do this. See, in this connection, *Lanier* v. *Hebard*, 123 *Ga.* 626 (51 S. E. 632) ; 2 C. J. 454.

While an authorization to a person to manage a business, such as a farm, would not generally include authority to make unusual

or extraordinary contracts with reference thereto, or to discontinue the operation of the farm, or to sell, pledge, or otherwise dispose of the farm, or radically change the nature of its operation, it would empower him to make such contracts as are incidental to such operation, which are usually made in it, or are reasonably necessary in conducting it; and to procure equipment and supplies reasonably necessary for the proper conduct of the business. See Restatement of the Law of Agency, Am. L. Inst. § 73. For "if a person imposes upon another the duties and responsibilities involving the management and control of a business, such person will be presumed to have authority to represent his employer in any matter within the scope of the business." *Pickens Co.* v. *Thomas,* 152 *Ga.* 648 (111 S. E. 27, 21 A. L. R. 1438). The general words of the power, when construed in connection with its *controlling purpose*—that of management and control of the estate, which included the operation of the farm, and also the special authorization in the power to make "all contracts in connection with the operation of the farm," gave to G. K. McLain ample power, under the allegations of the petition, to purchase the machinery, the purchase-price of which is here sought to be recovered. Nothing said herein conflicts with the rulings made in *White* v. *Young,* supra, or *Born* v. *Simmons,* 111 *Ga.* 869 (36 S. E. 956), or other cases cited by defendant in error.

■ The petition alleges a *delivery of the property purchased.* A right of action for the purchase-price of personal property will lie against the buyer when he accepts delivery of the property. Upon delivery of the property to defendants and their acceptance, the contract became executed, and an obligation on the part of the defendants arose to pay the purchase-price of the machine as provided in the contract. See *Dilman* v. *Patterson Produce & Commission Co.,* 2 *Ga. App.* 213 (58 S. E. 365). Of course, had the purchaser on delivery refused to accept the property, the remedy of the seller would be, not upon the contract for the purchase-price, but for the breach of the contract.

■ The plaintiff's petition was filed returnable to the May term, 1934, of the superior court of Terrell county. The contract sued upon provides for payment of the purchase-price in installments, $65 to be paid in cash on delivery of the machinery; $182.50 to be paid October 20, 1933, and $247.50 to be paid November 1.

1934. It affirmatively appears from the petition and its exhibits, therefore, that the installment in the amount of $247.50 had not become due at the time the suit was filed. We are therefore of the opinion that the special demurrer calling attention to this defect should be sustained. It is a well-settled principle that a plaintiff can not recover unless there exists at the time of the filing of the suit a cause of action. A cause of action arising pending the suit will not entitle the plaintiff to recover. *Deas* v. *Sammons,* 126 *Ga.* 431 (55 S. E. 170, 7 Ann. Cas. 1124) ; *Baker* v. *Tillman,* 84 *Ga.* 401 (11 S. E. 355) ; *Wadley* v. *Jones,* 55 *Ga.* 329; *Gentry* v. *Walker,* 101 *Ga.* 123 (28 S. E. 607) ; *Harris* v. *Moss,* 112 *Ga.* 95 (37 S. E. 123) ; *Becker* v. *Donalson,* 133 *Ga.* 864 (67 S. E. 92) ; *Mason* v. *Atlanta Fire Co.,* 70 *Ga.* 604 (48 Am. R. 585) ; *Gentry* v. *Barron,* 109 *Ga.* 172 (34 S. E. 349) ; *L. & N. R. Co.* v. *Ramsay,* 134 *Ga.* 107 (67 S. E. 652) ; *Town of Decatur* v. *Randall,* 144 *Ga.* 727 (87 S. E. 1036) ; *Macy* v. *Hays,* 163 *Ga.* 478 (136 S. E. 517) ; *Bank of Brooklet* v. *Motor Liens Inc.,* 164 *Ga.* 314 (138 S. E. 582) ; *U. S. Fidelity & Guaranty Co.* v. *Tucker,* 165 *Ga.* 283 (140 S. E. 866) ; *Backey* v. *Grow,* 38 *Ga. App.* 154 (142 S. E. 913). It is true that there did exist a cause of action in favor of the plaintiff for those installments that fell due up to the time of the bringing of the suit, but no cause of action existed with reference to the installment not due. "The status of a suit becomes fixed at the time the action is instituted, and therefore, when there is no cause of action at the commencement of the suit, there can be no recovery, although one may accrue respecting the same subject-matter while the suit is pending." *Kelly* v. *Cherry,* 40 *Ga. App.* 178 (149 S. E. 81). As was said in *McDonald* v. *Rimes,* 137 *Ga.* 732 (74 S. E. 266) : "A suit upon a contract for purchase-money due by installments may be maintained for the amount of such installments as were due at the institution of the suit, but not for installments to become due." Also in *Melton* v. *Hubbard,* 135 *Ga.* 128 (68 S. E. 1101) : "The plaintiff can not include in a suit to recover past due installments any installment which matured after the filing of the suit." Again in *Potts-Thompson Liquor Co.* v. *Potts,* 135 *Ga.* 451 (69 S. E. 734), it was said: "Where suit was brought on a written contract for rent payable in installments, a recovery could not be had for installments falling due after the suit was commenced." See also, in this connection,

*Franklin* v. *Ford,* 13 *Ga. App.* 469 (79 S. E. 366); *South Ga. Mercantile Co.* v. *Lance,* 143 *Ga.* 530 (85 S. E. 749). The demurrer should therefore have been sustained as to this part.

*Judgment reversed. Broyles, C. J., and MacIntyre, J., concur.*