Bell vs. McCawley, ex'or.

29    355
129    281

WILLIAM M. BELL, plaintiff in error, vs. JOSEPH C. McCAWLEY, executor of JAMES HAMPTON, deceased, defendant in error.

[1.] Muniments of title proven to have been in existence for forty years, with possession in conformity, and coming from the proper custody, are admissible as *ancient documents.*

[2.] A recorded deed of personal property is entitled to go in evidence without other proof.

3.] The presumption of a gift arising from the delivery of personal property by a parent to a child, may be rebutted by subsequent acknowledgements of the child that he is holding, and had held from the beginning, under a loan.

[4.] The doctrine that a purchase for value, without notice, takes precedence of a prior gift, applies only to a case where the two conflicting titles are derived from the *same source.*

[5.] The contents of a lost paper are not to be inferred from a *name* which the witnesses may give the paper, in opposition to proof of *its* terms. The contents determine the name, and not a name the contents.

Trover, in Cherokee Superior Court. Tried before Judge HAMMOND, March Term, 1859.

This was an action of trover brought by James Hampton, against William M. Bell, for the recovery of certain negroes, to-wit: Rose and Mary; and the children of Mary, viz: Moses, Hannah, and Ben.

The facts of this case are briefly these: Sometime prior to the year 1790, John Hampton, intermarried with Joice Malone, the daughter of William Malone, the parties at the time residing in Newberry District, South Carolina. On the 10th December, 1790, in consequence, it seems, of the contemplated removal of Hampton to the State of Georgia, Malone and Hampton entered into and executed what is termed by them a *"memorandum of agreement,"* whereby, after reciting that Malone had loaned to him, in consequence of his marriage with his daughter, a negro girl named Hannah, Hampton "binds himself, his heirs and assigns, whenever he or they may be called on by the said William, to deliver said negro woman, and increase, if any, to the said William, or his assigns," &c.

Afterwards, on the 27th October, 1797, the same parties signed and executed a " memerandum of agreement," reciting that Malone had loaned a negro boy, named Benjamin, to Hampton and wife, to be returned when demanded. In this paper it is recited that Malone is " of Oglethorpe coun-

Bell vs. McCawley, ex'or.

ty, and John Hampton of Washington county, both of the State of Georgia." Afterwards, on the 23d December, 1807, John Hampton signed an instrument, certifying that he had that day received from William Malone, his wife's father, two negroes, Hannah and Benjamin, and binding himself, his heirs, executors and administrators, "to deliver unto the aforesaid Malone, Sr., the said negroes, Hannah and Benjamin, or either of them, whenever he may call on me for the same." Witnessed by John Henley, Jr., and Daniel Johnson.

On the 14th December, 1811, William Malone executed a deed of a gift, by which he granted and conveyed to *James Hampton*, his grand-son, (being a son of the said John and Joice Hampton) "all his right, title, interest, claim and demand" in and to said negroes, Hannah and Benjamin, and their issue. This deed was executed in the presence of two witnesses, one of whom was a Justice of the Peace, and recorded in the office of the Clerk of the Superior Court of Jackson county, 16th September, 1812.

Sometime after the execution of this deed of gift, it is alleged, that the said James Hampton, the plaintiff, executed a *bond*, or instrument in writing, by which he conveyed to his father and mother, the said John and Joice, a life estate in and to said negroes and their increase; that they continued in the possession of the negroes, or their increase, till the death of John Hampton, that they then came into the possession of Joice Hampton, who sold Rose and Mary, two of the descendants of Hannah, to defendant, in the year 1838, who has held possession of the same ever since. Defendant is the brother-in-law of plaintiff, having married one of the daughters of said John and Joice Hampton. Joice Hampton died in 1852, and plaintiff demanded the said slaves and their increase from defendant, who refused to deliver them up, but claimed the same as his absolute property, under his purchase, for a valuable consideration from Mrs

Joice Hampton, as above stated. Upon this refusal plaintiff instituted this action, for the recovery of said slaves.

At the trial, plaintiff tendered in evidence the three "memorandum of agreements" before mentioned, between William Malone and John Hampton, dated respectively 10th December, 1790, 27th October, 1797, and 23d December, 1807. To the introduction of which, counsel for defendant objected, on the ground, that there was no proof of their execution. Plaintiff, to obviate this objection, examined Nathaniel F. Legg, who testified, that he received these papers from James Hampton, who said that he received them from William Malone. Witness further stated, that on enquiry he heard that Daniel Johnson was dead, and he could hear nothing of John Henley; was acquainted with the hand writing of John Hampton, and believes the signature to said instruments to be in his hand writing; that he had searched at the house of Joice Hampton, and at Abda Shockly's, for a bond, said to have been given by James Hampton, relative to the negroes in dispute, and the interest which John and Joice Hampton had therein, but could not find it. Shockly told him that he had given it to defendant, and defendant gave it to Ira Bell, who returned it to Shockly, and that Shockly did not know where it was.

Defendant had been notified to produce said bond, but purged himself under the rule, by swearing that he did not have it.

Upon this proof, the Court admitted the papers in evidence, and also the deed of gift from Malone to plaintiff, dated 14th December, 1811.

To which rulings defendant excepted.

A number of witnesses were then examined on both sides, whose testimony it is unnecessary to set out, as all the facts necessary to a full understanding of the case, are stated above, and in the opinion of this Court.

The Court charged the jury in reference to the bond, or conveyance of a life estate in said negroes, by James Hamp-

Bell vs. McCawley, ex'or.

ton to John and Joice Hampton, that as it expressed no consideration, the jury could use it for one purpose only, and that was as an acknowledgment of the parties of John and Joice Hampton's right to the property during their lives, so as to show at what time plaintiff's right of action accrued, and consequently at what time the statute of limitations commenced to run.

The jury found for the plaintiff eighteen hundred dollars for the negroes, to be discharged by the delivery of the negroes within sixty days, at Marietta, Georgia.   Also $576 00 for hire.

Whereupon, counsel for defendant moved for a new trial, upon the following grounds, viz:

1st, 2d, and 3d. Because the verdict was contrary to law, contrary to the evidence and the charge of the Court, and strongly and decidedly against the weight of the evidence.

4th. Because the Court erred in admitting in evidence, the instruments or "memorandums of agreements" between Malone and John Hampton, before referred to, without proof of their execution.

5th. Because the Court erred in admitting in evidence the deed of gift from Malone to James Hampton, the plaintiff, without proof of its execution.

6th. Because the Court erred in admitting evidence in reference to said bond, or conveyance from plaintiff to John and Joice Hampton, of a life estate in said slaves.

7th. Because the verdict was contrary to the charge of the Court, to the law and the evidence, and without evidence.

The Court refused the motion for a new trial, and defendant excepted.

BROWN & JORDAN, represented by HUGH BUCHANAN, for plaintiff in error.

IRWIN & LESTER, contra.

*By the Court.*—STEPHENS J. delivering the opinion.

[1.] We think the "memoranda" were sufficiently proven to be admitted in evidence, for aside from all the other proof, they were shown to be "ancient documents." They were shown to have come from the proper custody—from William Malone, and they were shown to have been in existence more than forty years, and the possession of the negroes was in conformity with these "memoranda" for the same period. All this shows them to be ancient documents, not needing further proof.

[2.] We think the certificate of record was sufficient to carry the deed of gift to the jury. As early as 1755, provision was made by statute (see *Cobb's Dig., page* 159) for recording all conveyances of real and personal property; and by subsequent statutes all such conveyances as are directed to be recorded, are to be admitted in evidence when they appear to have been recorded in conformity with law. This point was not urged in argument.

[3.] All of the other assignments of error resolve themselves into the single one, that the verdict is unsupported by the evidence. This being a case where the plaintiff must recover on proof of title in himself, and not on mere want of title in the defendant, it was argued that the title of these negroes was shown to be, not in James Hampton, but in John, his father; for that before John gave the "memoranda" acknowledging that he held them as a loan, they had already passed to him as a gift, by virtue of their having gone into his possession from his father-in-law. Admit it—yet if the negroes were his own, he could by virtue of his very dominion as owner *cease* to hold them as his own, and henceforth hold them as his father-in-law's. This is just what he did, and the agreement was binding. Whoever may have been the owner of the negroes before the execution of these "memoranda," William Malone was the owner after-

wards, and he subsequently conveyed his title to James Hampton, the plaintiff.

[4.] It was also argued, that because the plaintiff claimed under a voluntary conveyance without valuable consideration, while the defendant claimed under a conveyance for value, although from a person who had no title, the plaintiff's title must yield to the defendant's. The first answer to this is, that the evidence furnishes strong reason for believing that the defendant, though a purchaser for value, had *notice*—a circumstance which deprives him of all advantage in his conflict with the mere donee. In the next place, the doctrine of preferring a title founded on valuable consideration, over an older one without such foundation, applies only to a case where the conflicting titles are derived from the *same grantor*. It does not mean that the purchaser from one who never had any title, is to be preferred over a donee who has a gift from him who held the true title; for this would be in effect to deprive the owner of the power of making a valid gift of his property. The doctrine is, that in a conflict between two titles emanating from the same source, the one being a gift and the other a purchase for value without notice of the other, the purchase shall prevail, although it be subsequent to the gift. In this case, the donee claims from Malone, and the purchaser from Joice Hampton, and she claimed from nobody, except for her own life. The title here in contest is to the estate which was left after her death.

[5.] Again, it was argued, that according to the evidence, the plaintiff did not relieve himself from the statute of limitations, the bar being *prima facie* shown by the adverse possession of the defendant for fourteen years. We think he did relieve himself from that *prima facie* case, by showing that he had conveyed his title to Joice Hampton for her life, which lasted till 1852. This then, was the time when his *cause of action arose,* and it was within the four years next before the commencement of the action. It was said,

I remember, that this conveyance to his mother for life, was by *bond*, and that a bond cannot operate as a conveyance. The paper was sworn to be lost, and the witnesses testified as to what it contained.    They said it conveyed an estate for life.    It is a transparent fallacy to argue its contents from its *name;* its proper name depends upon its contents, and these are given by the witnesses.

Judgment affirmed.