Turner *et al. vs.* Tyson *et al.*

JOHN DOE, *ex dem.*, THOMAS M. TURNER *et al.*, plaintiffs in error, *vs.* RICHARD ROE, casual ejector, and THOMAS W. TYSON *et al.*, tenants in possession, defendants in error.

1. Where the plaintiff claimed title to land under a deed which was thirty years old, lacking three months, when the defendants' adverse possession under a deed commenced, which last deed was attacked by the plaintiff for forgery, it was error in the Court to charge the jury that "it was incumbent on the plaintiff to show that he had been in possession of the land in dispute, under the deed, or he would be driven to prove the execution of the deed as at common law, that is, he must prove by the subscribing witnesses, or one of them, the execution of the deed," as there was no adverse possession of the land inconsistent with the deed for nearly thirty years, and not then, if the title under which the defendants claimed was a forgery or fraudulent, and they had notice of it.

2. Where neither deed is recorded within the time prescribed by law, the oldest has the preference, and not the one first recorded.

3. To perfect a prescriptive title, the defendants and those under whom they claimed, must have been in possession of the land as their own, under color of written evidence of title and claim of right, for seven years next before the commencement of the plaintiff's action.

4. Where the question on trial was whether certain deeds were forgeries, and evidence of the insanity of the grantor at a certain time was admitted as tending to show that he did not execute the same, it was error in the Court to charge the jury that if the grantor was insane at the time of their execution, the deeds were void.

5. Where a deed is attacked for forgery, the admission of one of the heirs of the grantor, said heir having since died, as to its genuineness, being apparently against his interest, is competent evidence.

Ejectment. Evidence. Ancient deed. Deeds. Registry. Prescription. Charge of Court. Admissions. Before H. MORGAN, Esq., Judge *pro hac vice.* Worth Superior Court. May Term, 1873.

For the facts of this case, see the decision.

WRIGHT & WARREN; VASON & DAVIS, for plaintiff in error.

HARRIS & POPE; WILLIAM E. SMITH, for defendants.

WARNER, Chief Justice.

This was an action of ejectment brought by the plaintiff on the several demises of Turner *et al.*, against the defendants, to recover the possession of lot of land number one hundred and eight, in the fifteenth district of Worth county. The action was commenced on the 27th March, 1858. On the trial of the case, the jury, under the charge of the Court, found a verdict for the defendants. A motion was made for a new trial on the several grounds set forth in the record, which was overruled, and the plaintiff excepted. The plaintiff offered in evidence a copy grant from the State to David Myrick to the lot of land in dispute, dated 20th April, 1823; also a deed from David Myrick to Long, dated 12th May, 1825, made in Jasper county, witnessed by Mills and Jackson, Justice of the Peace, and recorded 17th April, 1858; also a deed from Long to Davis, dated 10th July, 1839, made in Gilmer county, witnessed by Craven and Green, Justice of the Peace, and recorded 17th April, 1858; also a deed from Davis to Turner, the plaintiff's lessor, dated 3d, December, 1856, made in Fulton county, witnessed by Goodman and Bell, Notary Public, recorded 19th April, 1858. The plaintiff read in evidence, a certified copy of an order from the Inferior Court of Putnam county, appointing a guardian for the person and property of David Myrick as an insane person, dated 10th October, 1825. D. A. Vason testified that he, with Snead and other attorneys at law, were employed by Turner, who was the only party plaintiff who had any interest in said case; that the deed from David Myrick to Long, one of the links in the plaintiff's chain of title, came into his possession from Snead & Allen who were the plaintiff's attorneys; that plaintiff recognized them as his attorneys, and employed witness to aid them in the prosecution of the suit at the time it was brought, and when they turned over the deeds to him they turned over the same as the deeds of Turner. At the time the suit was brought, and in all his connection with said case, Turner treated the deeds as his property. The de-

Turner *et al.* *vs.* Tyson *et al.*

fendants, after showing that they had made search for the origi-
nal title papers and being unable to find them, then offered in
evidence the record book of deeds of Worth county, contain-
ing the record of a deed from David Myrick to Beard, dated
3d October, 1828, the county where it was executed not being
stated, but left blank, and was signed thus, David (his ⋈
mark) Myrick, and witnessed by Brooks and Thomas G. Bates,
Justice of the Peace, recorded 3d November, 1854; also the
record of a deed from Beard to Sinclair and Calhoun, exe-
cuted by Johnson under a power-of-attorney dated 14th No-
vember, 1854, recorded 30th November, 1854; also a deed
from Sinclair and Calhoun to Ford, dated 10th February,
1855, and recorded 17th August, 1857.

1. It appears from the evidence in the record that when Ford
purchased the lot he took possession of it, in 1855; there was
a woman living on the lot, Becky Wilson, who attorned to
him as his tenant. Tyson was made a party defendant to the
suit by order of the Court, but it does not appear that he had
any paper title to the land—was in possession of it and had
put substantial improvements thereon, and claimed under
Ford's title. The plaintiff made an affidavit that the deed
purporting to have been made by David Myrick to Beard, on
the 3d of October, 1828, and witnessed by Brooks and Thomas
Bates, Justice of the Peace, under which the defendants
claimed, was a forgery, and the defendants also made an affi-
davit that the deed purporting to have been made by David
Myrick to Long, in 1825, under which the plaintiff claimed,
was a forgery. The plaintiff offered in evidence a certificate
from the Executive Department of the State showing that no
such Justice of the Peace as Bates was in commission, as such,
at the date of the deed from Myrick to Beard. There is other
evidence in the record going to show the time at which My-
rick became insane, that he was an educated man and could
write his name, etc., and that he moved from Jasper to Putnam
county. The deed to the land made by Myrick to Long, on
the 12th of May, 1825, was thirty years old lacking three
months when Ford's adverse possession commenced, in Feb-

Turner *et al. vs.* Tyson *et al.*

ruary 1855, under color of title. If there was any possession of the land before that time by any one, they were mere squatters, and their possession was in subordination to the title of the true owner thereof, and was not *inconsistent* with Long's title derived from Myrick. The 2658 section of the Code declares, that a deed more than thirty years old, having the appearance of genuineness on inspection, and coming from the proper custody, if possession has been consistent therewith, is admissible in evidence without proof of execution.

The Court charged the jury in this case that it was incumbent on the plaintiff to show that he had been in possession of the land in dispute under the deed, or he would be driven to prove the execution of the deed, as at common law, that is, he must prove by the subscribing witnesses, or one of them, the execution of the deed. This charge of the Court, in view of the facts disclosed in the record, was error—construing this section of the Code in the light of the decision of this Court, in *McCluskey vs. Leadbetter,* 1 *Kelly's Reports,* 351, a deed thirty years old, having the appearance of genuineness on inspection, and coming from the proper custody of those claiming title under it, may be read in evidence without proof of its execution, where there is no adverse possession of the property conveyed by it *inconsistent* therewith : See, also, *Mathews vs. Castleberry,* 43 *Georgia Reports,* 346. In this case there was no adverse possession of the land inconsistent with the deed for nearly thirty years, and not then, if the title under which the defendant claimed was a forgery or fraudulent, and he had notice of it.

2. The Court also charged the jury that when there are two deeds from the same party, and both are recorded, the one first on record is (other things being equal,) the superior and better title, although the other may be the oldest deed. If you believe, then, that defendants' deed was first on record, then it will be your duty to find for defendants, should you be satisfied under the evidence that such was genuine. This charge of the Court was error, as neither the plaintiff's, or defendants' deeds from Myrick were recorded within the time

prescribed by law, and when that is the case, the oldest deed has the preference, and not the deed first recorded : *Martin vs. Williams,* 27 *Georgia Reports,* 406.

3. The Court further charged the jury, that if the defendants and those under whom they claim have been in the actual, uninterrupted, continuous possession of the land as their own, under a color of title, for seven years, the defendants' title has ripened into a title by prescription, which is good against the claimant.  This charge of the Court was also error, as it did not state to the jury that the defendants, and those under whom they claimed, must have been in the possession of the land as their own, under color of *written evidence of title and claim of right,* for seven years next before the commencement of the plaintiff's action.

4. The Court also charged the jury that if they were satisfied from the testimony, that Myrick was insane on the 11th of May, 1825, or on the 3d of October, 1828, then the deeds executed by him at the respective dates thereof was void. This charge of the Court, in view of the question at issue and on trial between the parties, was error.   The question at issue and on trial was not whether the deeds were void on account of Myrick's insanity, but the question was whether he ever made and executed the respective deeds, or whether the same were forgeries ; and the evidence of his insanity at a stated period of time was only admissible for the purpose of illustrating or throwing light upon that question, inasmuch as an insane man would not have been as likely to have executed a deed as a sane man.   Neither party sought to avoid the deeds made by Myrick on the ground of *insanity,* but attacked them on the ground that the same were *forged.*

5.  The evidence of Vason as to the admissions of Robert Myrick as to the genuineness of the deed under which the plaintiff claimed, Robert being one of the heirs of David, and both being dead, was admissible in evidence, in view of the facts and circumstances of this case.   If the deeds were forgeries, then the land, on the death of David, would have descended to his heirs, and it would have:

been the interest of his heirs to have established that fact rather than to have established the genuineness of the deed which passed the title out of him. It is true that the plaintiff does not claim title to the land under the heirs of David Myrick, but the question made on the trial by the affidavit of the forgery of the deed, does raise the question whether the title to the land had ever passed out of him, and the admission of one of his heirs, who is now dead, apparently against his interest, that the deed of David was genuine, was admissible in this case in support of the plaintiff's ancient deed, which was attacked on the ground of forgery after the lapse of thirty years. It was a circumstance, in view of the peculiar facts of the case, which should have been submitted to the jury for their consideration, in support of the plaintiff's ancient deed, when attacked as a forgery by the affidavit of the defendant, under the provisions of the Code.

Let the judgment of the Court below be reversed.