## GASKINS *v.* GUTHRIE *et al.*

1. A deed more than thirty years old, having the appearance of genuineness on inspection, and coming from the proper custody, if possession has been consistent therewith, is admissible in evidence without proof of its execution.

2. Where such a deed as described in headnote 1 is apparently genuine, has come from the proper custody, and is shown not to be inconsistent with possession, or if other corroboration appears, it should be admitted in evidence as prima facie established. But the jury has the right to finally pass on its genuineness, after hearing all the testimony pro and con, as to its genuineness.

3. Under the facts of this case the court should have admitted the deeds in evidence under proper instructions.

No. 5057.	APRIL 13, 1926.

Ejectment. Before Judge W. E. Thomas. Berrien superior court. March 17, 1925.

*C. A. Christian* and *Hendricks & Hendricks,* for plaintiff.

*J. A. Alexander, Quincey & Rice,* and *Dewey Knight,* for defendants.

HILL, J. P. H. Gaskins brought ejectment against S. F. Guthrie and John A. Gaskins, as tenants in possession, to recover lot of land No. 248 in the 10th district of Berrien County. On the trial of the case the plaintiff relied for recovery upon a chain of title originating in Julius Bates, the grantee from the State of Georgia. The plaintiff offered to show title out of Julius Bates by a prior deed dated March 26, 1861, to John Arnett. This deed was offered as an ancient·document, and not as a recorded instrument. The defendants objected to the admission of this deed, and every one of the deeds in the chain of title from Bates to the various grantees, ending in the deed to the father of the plaintiff, when offered in evidence by the plaintiff, the grounds of objection being: "(a) That it is apparent from an inspection of the deed that it is not a genuine deed. (b) And while the deed purports to have been executed in the year 1861, it was not recorded nor filed for record until the year 1918; and this of itself is strong evidence of the fact that the deed is a forgery. (c) Because no evidence has been submitted that the deed offered as an ancient document has been in existence for a period of thirty years, nor has any evidence been submitted that possession of the land

Evidence, 22 C. J. p. 945, n. 66; p. 968, n. 84.

described in the deed has been consistent with the deed, nor that possession of any character has ever been held thereunder." The court sustained the objection, excluded the deeds from evidence, and granted a nonsuit. To these rulings the plaintiff excepted on the ground that the evidence was sufficient to make a prima facie case of the existence of each of the deeds for a period of time more than thirty years, and sufficient to establish each and every one of the deeds as ancient documents. The specific grounds of exception to the rejection of the deeds in evidence are as follows: "(a) The evidence introduced by the plaintiff in its entirety, both oral and documentary, shows that the plaintiff was in possession of the titles to the tract of land involved for a period of more than thirty years; that the deeds were more than thirty years of age; that this possession carried with it the presumption of genuineness, and was sufficient to authorize a recovery in behalf of the plaintiff. (b) The evidence of Fisher W. Gaskins and J. G. Gaskins, showing that there was a package of title deeds found in the safe of W. W. Gaskins, deceased, the father of the plaintiff in this case, and that this package of deeds was delivered by Fisher W. Gaskins to J. G. Gaskins, one of the guardians of the plaintiff, and from J. G. Gaskins to the mother of the plaintiff, who was his guardian, and from J. H. Powell, the last guardian, to the plaintiff in this case, and that all the title deeds as introduced in evidence were received from the hands of the guardians of the plaintiff on or about his majority, was at least sufficient evidence to submit the question of the possession of the deeds, the bona fides of the plaintiff's claim of title, and the fact as to whether or not the deeds were in truth and fact thirty years of age, or more; and these being questions of fact to be determined by the jury from all of the evidence, both oral and documentary, the court committed error in invading the province of the jury and deciding as a matter of law that the deeds were not in the possession of W. W. Gaskins at the time of his death, and that they were not thereafter received by the several guardians and finally passed from the last guardian, John H. Powell, to the plaintiff in this case. (c) The plaintiff made a sufficient prima facie case of title to shift the burden upon the defendant, especially in view of the fact that he was an infant of the tender age of one or two years at the time of the death of his father, and that his mother,

his stepfather, and his last guardian are all dead, together with many other circumstances reflected by the record, making it difficult for the plaintiff to produce that certain and definite testimony that may be produced in many cases. The plaintiff made such a case as would prima facie at least entitle him to recover, and formed an issue of fact to be passed upon by the jury. The direction of a nonsuit invaded the province of the jury, determined issues of fact which the jury only could pass upon, and for this reason the direction of a nonsuit in the case was error. (d) Upon the sustaining of the motion to exclude each, all and every deed offered in evidence by the plaintiff, counsel for the defendants made a motion for the grant of a nonsuit, for the reason that the plaintiff had failed to prove his case as brought." To the granting of the nonsuit the plaintiff excepted "for the reason that the evidence offered by the plaintiff, and excluded on objection of counsel for the defendants, was admissible, for the reason that it proved the plaintiff's case as brought. It at least formed an issue of fact for the jury to determine whether the deeds, as a matter of fact, were more than thirty years of age, and had been in the continuous possession of W. W. Gaskins, the father of the plaintiff, his predecessors in title, and the guardians of the plaintiff until he reached his majority, and that as a matter of fact the plaintiff was claiming title to the land described in his petition by reason and virtue of his chain of title offered in evidence. To exclude the testimony and grant the nonsuit invaded the province of the jury and took from them the right to pass upon the facts developed by the introduction of testimony offered upon the part of the plaintiff; and the ruling of the court, both in the excluding of the testimony and the granting of a nonsuit, was error harmful and prejudicial to the rights of the plaintiff."

In *McCleskey* v. *Leadbetter*, 1 *Ga.* 551, this court held that "A deed or other instrument in writing, more than thirty years old, need not be proven, but is admitted in evidence as an ancient document, provided its genuineness be satisfactorily established." In delivering the opinion of the court in that case Judge Nesbit said: "In this action of trover for certain slaves, Amy and her children and grandchildren, the plaintiff introduced in evidence a bill of sale from Drury Leadbetter, dated in 1790, to one Buckner Harris, conveying certain slaves, and among them Amy, to

said Harris. He further introduced in evidence an instrument in writing, bearing date in 1804, signed by Buckner Harris and attested by two witnesses, one of whom signed officially as a magistrate, which instrument appears, from the record, to have been recorded on the books in Greene County superior court, but at what time [was] not disclosed. This instrument recites, or rather purports to certify, that the maker, Buckner Harris, did, several years before, convey to the plaintiff, Washington Leadbetter, by way of deed of gift, two negroes, to wit, Amy and Malinda, and that the title to said negroes was vested in him, as appeared from the records of the clerk's office of Wilkes County. . . This paper was properly admitted as an ancient document. The usual proof of execution was not necessary. In the nervous [ ?] language of Buller, in Rex *v.* The Inhabitants of Farringdon (2 Tr. Reps. 471), 'it is an established rule, which holds, in case of every deed, that if it be above thirty years standing, it proves itself.' This document is more than thirty years old. We take the rule upon this subject to be this: 'an ancient deed, by which is meant one more than thirty years old, having nothing suspicious about it, is presumed to be genuine without express proof, the witnesses being presumed dead; and if it is found in the proper custody, and is corroborated by ancient or modern corresponding enjoyment, or by other equivalent or explanatory proof, it is to be presumed that the deed constituted part of the actual transfer of property therein mentioned.' Greenleaf, 173-4, sec. 142-3-4. They are to be considered as parts of the res gestæ, from which we infer the whole transaction, ex uno disces omnes: or, to use the beautiful and apt illustration of Prof. Greenleaf: 'the residue of the transaction may be as unerringly inferred from the existence of genuine ancient documents, as the remainder of a statue may be made out from an existing torso, or a perfect skeleton from the fossil remains of a part.' It is necessary, however, to ascertain the *genuineness* of these ancient documents, for their value depends upon that fact. This may be shown prima facie, by proof that the document comes from the *proper custody,* or by otherwise accounting for it. Documents found in a place in which, and under the care of persons with whom, the care of such papers might naturally and reasonably be expected to be found, are in precisely the custody which gives authenticity to them. Greenleaf, 172, sec. 142; 2 Bing. N. C.

183, 200, 201; 2 Anstr. 601; 3 Taunt. 91; 5 Price, 312; 1 Ib. 225, 232; 2 Ib. 303, 307; 4 Wheat. 213, 221; 9 Peters, 663-675; 5 Ib. 309, 344; 3 Johns. Cas. 283; 5 Cowen, 221; 7 Wend. 371; 2 Nott and M'Cord, 400; 2 Ib. 55; 2 M. and Rob. 240. Now, for the custody of this document, there is no place provided by law; there is for such a paper no legal depository. The person interested in and claiming under it is the person naturally and reasonably expected to keep it. So far as the record discloses the facts, it came out of Washington Leadbetter; it was found in his custody; he exhibited it in evidence, and he is the person who is named in it as the remainderman. Who else should have it, or where would one go to find such a paper, but to him, of all the world most interested in it. It is farther desirable, that there be proof of some act done in reference to the document offered, as further assurance of its genuineness; such as early possession and enjoyment, or modern possession and user. And in all cases where unexceptionable evidence of enjoyment, referable to the document, may reasonably be expected to be found, it must be produced. Greenleaf, 173, sec. 143; 1 Phil. Ev. 277; 10 B. & C. 17. In the case before us, the record shows possession in the tenant for life at a very early period, and down to her death, and the assertion of plaintiff's claim immediately on her death. Also the suing out, by the plaintiff, of a process against the defendant, before the death of the tenant for life, to enjoin him from taking the property out of the jurisdiction of the court. So that this part of the rule seems to have been complied with. Further evidence of its genuineness is found in the fact of its having been recorded, which, according to some of the authorities, dispenses with proof of possession, or other act of enjoyment referable to the deed. A very grave question has been made, whether proof of possession is not indispensable; or whether its absence may be supplied by other satisfactory corroborative evidence—Chancellor Kent, sustained by many authorities, holding the former opinion. For this position see 3 Johns. Cas. 283; Coke Lit. 6 b; 1 Roll. R. 132; Skin. 239; 2 Mod. 323; 110 Black. R. 532; 3 Johns. R. 292, 298. The latter proposition, however, seems to be sustained by more numerous, if not higher authorities, and is considered as the rule. It is now agreed, that where proof of possession can not be had, the deed may be read, if its genuineness is satisfac-

torily established by other circumstances. 6 Dow. 202, by Lord Eldon; 9 Ves. 5; 2 C. and P. 440; 4 Wheat. 213, 221; 3 Johns. Cas. 283, 287; 5 Cow. 221, 225; 7 Cow. 431; 7 Wend. 371, 373-4; also cases collected in Cowen and Hill's notes to 1 Phil. Ev. 477. The principles stated apply to all documents or writings which convey rights of any kind, as well as to deeds and wills. See 2 T. R. 470-71; 5 T. R. 412, in note; 4 B. and Ald. 376; 6 Eng. C. L. Reps. 452."

It will be observed from reading the above that Judge Nesbit draws a distinction between the *proper custody* of the *documents,* and the consistent *possession* of the *property* in the person claiming rights under the possession of such documents and possession of the property. It will be noted that the learned Judge declares that further evidence of the genuineness of the document is to be found in the fact of its having been recorded, which he says, according to some authorities, dispenses with proof of possession or other act of enjoyment referable to the deed. In *Turner* v. *Tyson,* 49 *Ga.* 168, this court held that "A deed thirty years old, having the appearance of genuineness on inspection, and coming from the proper custody of those claiming title under it, may be read in evidence without proof of its execution, where there is no adverse possession of the property conveyed by it inconsistent therewith."

In 4 Wigmore on Ev. (2d ed.) 560, § 2140, the author says: "A third requirement is that the document must in appearance be unsuspicious. No definition of the marks of suspicion which will exclude its use seems to have been agreed upon; but the general notion is conceded." In this connection the author quotes from Jackson, J., in *Hill* v. *Nisbet,* 58 *Ga.* 586, 589: "On inspection it must exhibit an honest face; otherwise, it is not such an ancient document that its countenance will pass muster. Code, § 2700; 4 Phillips' Evidence, 366, note, and cases cited. Age will not sanctify earmarks of fraud." In § 2141 (2) Prof. Wigmore continues: "In the United States, the controversy appears in the rulings of almost all of the older States, and long vacillation is sometimes found, especially in New York. The greater number of courts seem to have settled, with fair certainty, upon the proposition that possession is not necessary as an absolute requirement; but that either this or some other circumstance, giving an

equivalent inference of genuineness, must appear as additional to those of age, appearance, and custody. There are further minor variations in some of the jurisdictions; but the general result is represented by these three distinct forms, viz., requiring possession absolutely, requiring it alternately, and not requiring it at all. The effect of a recording of the deed would serve sometimes to supplant other requirements." In a note to this section the author cites the following Georgia cases: *McCleskey* v. *Leadbetter,* 1 *Ga.* 551, 558; *Beverly* v. *Burke,* 9 *Ga.* 440 (54 Am. D. 351); *Jordan* v. *Cameron,* 12 *Ga.* 267, 269; *Jones* v. *Morgan,* 13 *Ga.* 515, 523; *Bell* v. *McCawley,* 29 *Ga.* 355, 360; *Doe* v. *Roe,* 31 *Ga.* 593, 599; *Webb* v. *Wilcher,* 33 *Ga.* 565, 568; Code, 1860, § 2658; Code, 1895, § 3610; Civil Code, 1910, § 4190, wherein it is stated "if possession has been consistent therewith;" *Matthews* v. *Castleberry,* 43 *Ga.* 346, 350; *Payne* v. *Ormond,* 44 *Ga.* 514, 526; *Turner* v. *Tyson,* 49 *Ga.* 165, where it was held sufficient if there has been no inconsistent adverse possession; *Gardner* v. *Granniss,* 57 *Ga.* 539, 555; *Thursby* v. *Myers,* 57 *Ga.* 155, 157; *Weitman* v. *Thiot,* 64 *Ga.* 11, 17; *Pridgen* v. *Green,* 80 *Ga.* 737, 739 (7 S. E. 97); *King* v. *Sears,* 91 *Ga.* 577, 586 (18 S. E. 830), where it was held that a deed with possession was received; *Williamson* v. *Mosley,* 110 *Ga.* 53 (35 S. E. 301); *Leverett* v. *Tift,* 6 *Ga. App.* 90 (64 S. E. 317), where it was held that a deed of 1843 recently recorded was admitted without proof of possession.

From a review of the foregoing cases and also what is said by text-writers on the subject, it appears that in most, if not all, of the cases the deeds which were admitted in evidence had been recorded, some of them shortly after their execution, which fact carried genuineness apparently upon their face; and while it is true that an ancient document over thirty years of age, which appears to be genuine upon inspection upon its face, need not be recorded, yet that is one of the evidences which may be considered in determining whether it carries upon its face such genuineness as that it may be submitted to the jury. In the present case the deed offered in evidence was not recorded, or at least it was not offered as a recorded instrument, although the paper offered purported to be witnessed by two persons one of whom was the clerk of the superior court, whose official signature would tend to es-

tablish the age of the paper. *Pridgen* v. *Green,* supra. But there is nothing in the record itself which shows that at the time it was offered in evidence it was recorded. What other evidence of the genuineness of the deed was offered to the trial judge? The plaintiff, P. H. Gaskins, testified: "My birthday is December 18, 1887. I have examined the deed from Julius Bates to John Arnett. I have seen it before. Received it from J. H. Powell, who was my guardian, about 1909 or 1910 after I had reached my majority. It was in the present condition when I received it, except I am almost certain it did not have the patch on it to hold it together. The deed you tender me for examination from John Arnett to John Hewett, purporting to convey lot of land 248 in the 10th district in Berrien County, was given to me. The deed tendered to me for identification, from John Hewett to David J. McGee, is one of the deeds given to me at the same time as others. The deed handed me for identification, from David J. McGee to Thos. Paulk, W. W. Gaskins, M. Henderson, and J. W. Paulk, is one of them. The deed handed me for identification, from J. W. Paulk to M. Henderson to Thos. Paulk and W. W. Gaskins, is one of the same lot. All the deeds that have been handed or exhibited to me, and which I have identified, were received by me as a part of my chain of title, together with the deed to John Arnett. My father was W. W. Gaskins. He sometimes went by the name of Bobby. My father has been dead since 1890, 35 years ago. My mother has been dead since 1905. She was my guardian before J. H. Powell. The plot and grant that is mutilated, together with a certified copy, to lot of land 248 in the 10th district of Irwin County, now Berrien County, I purchased that plot and grant from the heirs of Julius Bates, or his administrator. These deeds offered to me for identification were received from J. H. Powell, and have been in my possession since I reached my majority, or about that time, or in the custody of my attorneys. Have been bona fide claiming the land named in the title since I reached my majority. The plot and grant from the State of Georgia to Julius Bates, together with the other chain of title, has been in my possession since I received them. Q. Do you recall about the time that you got the plot and grant to Julius Bates? A. I do not. I can not recall. It was sometime after I received the deeds from my guardian and had a settlement with him." Fisher W. Gaskins

testified by deposition: "I knew W. W. Gaskins in his lifetime. He was said to be my brother. He was commonly called Bobby Gaskins. I was present when his safe was opened after his death, but I don't remember who was with me. My best recollection, there was a package or bundle of deeds purporting to convey the title into W. W. Gaskins to lot of land 248 in the 10th district of Berrien County, Georgia, found in his safe. I delivered the deeds to J. G. Gaskins and M. Gaskins, guardians for P. H. Gaskins, J. G. Gaskins, and Mrs. Gaskins. That is the same P. H. Gaskins who is now the plaintiff in this suit. I just took a package of deeds out of the safe and saw enough to know that it was lot 248. I don't know who made any of them. I don't remember whether any plot and grant was with them or not. I can't say now." There was other evidence similar to that quoted above. There was no evidence showing possession of the land in controversy in either the plaintiff or those under whom he claims to hold. After hearing the evidence as above indicated, the court rejected the deeds and granted a nonsuit.

The record in this case is somewhat confused, and the question as to whether the deeds should be admitted in evidence is a very close one under the facts of this case, and under the authorities which have been cited. However, we are of the opinion that the better view is that they should be admitted in evidence, and let the jury say, in the light of all the facts, whether they are genuine or not. The admission of the deeds in evidence would not be decisive of their genuineness; the jury might still, viewing them in the light of all the facts which might be developed upon the trial of the case, think they are not genuine, and find accordingly. *Gardner* v. *Granniss,* supra.

*Judgment reversed. All the Justices concur.*