GUTHRIE *et al. v.* GASKINS; *et vice versa.*

*Quincey & Rice, Quincey & Quincey, J. A. Alexander,* and *J. P. Knight,* for plaintiffs in error (defendants).

*R. A. Hendricks, C. A. Christian,* and *R. F. Hendricks,* contra.

PER CURIAM. ■ The motion to dismiss the main bill of exceptions is without merit.

■ It is well settled that a defendant in ejectment can defeat the plaintiff therein by showing a paramount title to the premises in dispute, outstanding in another, without connecting his possession therewith. *Sutton* v. *McLeod,* 29 *Ga.* 589; *Brumbalo* v. *Baxter,* 33 *Ga.* 81; *Roe* v. *Maund,* 48 *Ga.* 461; *Jenkins* v. *So. Ry. Co.,* 109 *Ga.* 35 (34 S. E. 355); *Waters* v. *Durrence,* 119 *Ga.* 934 (47 S. E. 216).

■ The plaintiff claims title to the lot in dispute, under the following: Deed from Julius Bates, the grantee of said lot in a grant from the State, to John Arnett, dated March 26, 1861; deed to said lot from J. J. Bates, as administrator de bonis non with will annexed of Julius Bates, to the plaintiff, dated July 2, 1913; and quitclaim deed from the heirs at law of Julius Bates to plaintiff to the lot in dispute, dated July 21, 1913. To show paramount title to this land outstanding in one other than the plaintiff, the defendants introduced in evidence a certified copy of a deed from Julius Bates to J. M. Mountgomery to this lot, dated June 5, 1842, attested by David Sirmans, W. W. Smith Sr., and L. J. Knight (the last attesting as a justice of the peace), and recorded in the clerk's office of Berrien superior court. This deed purports to have been signed by Julius Bates by his own hand, and

not by his mark. The plaintiff attacked this deed upon the ground that it was a forgery. To sustain this attack the plaintiff introduced the will of Julius Bates, dated March 11, 1860, which was signed by his mark. From this signature to his will by his mark the plaintiff draws the conclusion that Bates was unable to write, and from such inability to write makes the deduction that his signature to this deed was a forgery. The evidence introduced by the plaintiff to show that this deed was not a genuine one is insufficient to accomplish that purpose. The signature of a grantor to a deed, made by another in his presence and at his request, is a valid execution of the instrument and would bind the grantor, especially when the deed was delivered. A deed attested by three witnesses, one of whom is an officer authorized by law to attest deeds, and recorded, is admissible in evidence without further proof of its execution, and all presumptions are in favor of its genuineness. *Granniss* v. *Irvin,* 39 *Ga.* 22. If the grantor did not sign with his own hand, but stood by and directed another to sign for him, and it was signed in his presence, such act would not be that of his agent, but would be signing by the grantor. *Ellis* v. *Francis,* 9 *Ga.* 325; *Vickers* v. *Hawkins,* 128 *Ga.* 794, 799 (58 S. E. 44) ; Gardner *v.* Gardner, 5 Cush. 483 (52 Am. D. 740). The fact that the grantor could not write, if such were the case, would not contradict the attestation clause; nor would it necessarily follow, merely because the grantor could not write, that his signature to the deed was placed there improperly, or was a forgery. One of the attesting witnesses being a justice of the peace, all the presumptions are in favor of his having done his duty. If he did his duty, he would not have placed his signature to the attestation of the deed unless it had been executed by the grantor in such manner as to make the act of signing the deed the act of the grantor. To hold that he was derelict in duty in this matter would in effect be to impeach his official act by a mere circumstance which would not necessarily conflict with what his signature purported to attest. The circumstance relied on to impeach the verity of the officer's attestation, namely, that the grantor could not write, is at most equivocal, and is consistent either with the theory that the instrument is a forgery or that it is genuine. To impeach the attestation of the officer there should be no equivocation, but the evidence should affirmatively and necessarily contra-

dict it. All the presumptions being in favor of this duly recorded deed, there is a presumption that it was a genuine deed of the grantor; and it can not be held as a matter of law that the presumption in favor of its genuineness was destroyed by mere proof of the fact that the grantor could not write. This is especially so when this attack on the deed was made 86 years after its date and record. The ruling in *Hansen* v. *Owens,* 132 *Ga.* 648 (6) (64 S. E. 800), was by a divided court, Justice Atkinson dissenting; and we think the dissent presents the better law of the case.

■ Plaintiff claims title to the lot in dispute under the deed from Julius Bates to John Arnett. On a former trial of this case the plaintiff introduced this deed. Whereupon the defendant, J. H. Gaskins, filed his affidavit in which he attacked said deed as a forgery. Thereupon the presiding judge passed an order withdrawing the case from the consideration of the jury, and directing that the issue of forgery vel non be separately tried by the jury. To this order no exception was taken by either the plaintiff or the defendants. Thereafter the case came on for trial; and, without any objection on the part of either the plaintiff or defendants, the issue of forgery and the main case were tried together. This trial resulted in a nonsuit; and the judgment nonsuiting the case was dealt with and reversed by this court when the case was last before it. *Gaskins* v. *Guthrie,* 162 *Ga.* 103 (132 S. E. 764). When the case went back for trial, the defendants moved that the issue of forgery be first tried, and the court overruled this motion; and to this ruling the defendants except in one of the grounds of their motion for new trial. An objection which does not extend to the verdict can not properly be made the ground of a motion for new trial. *Barber* v. *Barber,* 157 *Ga.* 188 (121 S. E. 317) ; *Faison* v. *Lanier,* 164 *Ga.* 742 (139 S. E. 540). This being so, we can not pass upon the question whether the court erred in overruling the motion of the defendants to have the issue of forgery vel non tried separately. To review this ruling the defendants should have excepted pendente lite, and have assigned error thereon in this court.

■ Under the previous ruling of this court, the trial judge did not err in admitting in evidence, over the objection of the defendants, the deed from Julius Bates to John Arnett, dated March 26, 1861, said deed being offered by the plaintiff and admitted as an ancient document, and purporting to convey the land in con-

troversy, there being other evidence tending to show that it was an ancient document. *Gaskins* v. *Guthrie,* supra. Said deed was admissible, subject to the attack made by the defendants on its genuineness.

■ Under the previous ruling of this court, the trial judge did not err in admitting in evidence the deed from John Arnett to John Hewett, dated February 10, 1880, said deed being offered by the plaintiff and admitted as an ancient document. *Gaskins* v. *Guthrie,* supra. Said deed was admissible, subject to the attack made by the defendants on its genuineness.

■ The above ruling is applicable to the admission in evidence of the deed from John Hewett to Daniel J. McGee, dated August 5, 1881, purporting to convey the lot of land in question; to the admission in evidence of the deed from McGee to Thomas Paulk, W. W. Gaskins, M. Henderson, and J. W. Paulk, dated November 11, 1881; and to the admission in evidence of the deed from J. W. Paulk and M. Henderson to Thomas Paulk and W. W. Gaskins, dated June 8, 1888, conveying a half undivided interest in the lot of land in dispute. These deeds were tendered as ancient documents, without any attack upon their genuineness; and were held, when the case was here before, to be admissible under the proof offered to establish that they were ancient documents.

■ The court charged the jury as follows: "The judge instructs you in this connection that a deed without witnesses is legal and binding between the parties; and in such case and in this case, if you believe that Julius Bates made, signed, and delivered the deed involved to John Arnett, and you further believe that the plaintiff has in all other respects proved his case, and is entitled to recover under the evidence in the case, the plaintiff would be entitled to recover, though you believe that N. L. Osborn's, one of the witnesses, name was forged to the deed." To the issue as to the genuineness of the signature of N. L. Osborn, the subscribing official witness to the deed referred to by the judge, this instruction was not properly adjusted. When a deed is put in evidence, purporting to have the name of one subscribed as clerk of the superior court as a subscribing witness, and it is shown that the signature of such person is not genuine, such proof, in the absence of rebutting evidence, is conclusive evidence of the forgery of the paper, and the fact can not be weakened by supposition. *Durham*

v. *Holeman,* 30 *Ga.* 619; *Durham &c. Co.* v. *Wingfield,* 142 *Ga.* 725 (83 S. E. 683). The fact that a deed is an ancient deed is not sufficient proof of itself to overcome proof that the signature of the attesting official is a forgery.

■ The court charged the jury as follows: "If you believe that the deed in question was a genuine deed from Julius Bates, and you believe that the plaintiff was in other respects and is in other respects entitled to recover, then your verdict would be in favor of the plaintiff." The defendants except to this charge, upon the ground that it is not a correct statement of the law applicable to this case, and because the deed from Bates to Arnett had by movants been attacked as a forgery, and the testimony of witnesses had been admitted to the jury to show that it was a forgery, and yet the court failed to instruct the jury that said deed was attacked as a forgery, and did not in said instruction or elsewhere instruct the jury as to what evidence would be sufficient to prove that said deed was a forgery, because the jury were told that if they found that this one single deed was genuine the plaintiff would be entitled to recover, and they should so find. There being evidence tending to show that this deed was an ancient deed and genuine, and evidence offered by the defendants attacking its genuineness, this charge was applicable, and the court did not err in giving it.

■ The court charged the jury as follows: "The law provides that it is a general rule of evidence that ancient documents purporting to be a part of the transaction to which they relate are admissible in evidence. A deed more than thirty years old, having the appearance of genuineness on inspection, and coming from the proper custody, if possession has been consistent therewith, is admissible in evidence without proof of execution." The defendants except to this charge, upon the ground that it does not correctly state the law of Georgia; that the law requires that proof of the existence of ancient documents for a period of at least thirty years must be shown before they are admissible in evidence; that it was erroneous, because the deed referred to in said charge did not have the appearance of genuineness on inspection, and this fact had already been determined when the deeds referred to had been submitted to Judge Dickerson, and he by order on that date permitted an affidavit of forgery to be filed. This charge was not erroneous for any of the reasons assigned.

■ The court charged the jury as follows: "In measuring the damage, if any, for timber cut or for turpentine interests appropriated, the measure of recovery for the plaintiff would be the fair market value of the interest taken at the time it was taken. In the event the plaintiff is entitled to recover mesne profits or would be authorized to recover, a recovery would be authorized at a time beginning four years from the filing of the first suit filed in this case, and which was dismissed, and from that time up to the present date, whatever you find the injury or damage is if you find there was such." The defendants except to this charge, upon the ground that it instructed the jury that they might find for the plaintiff damages which accrued within four years prior to the time of the filing of the first suit in this case. If a plaintiff shall be nonsuited, or shall discontinue or dismiss his case, and shall recommence within six months, such renewed case shall stand upon the same footing as to limitation as the original case; but this privilege of dismissal or renewal shall be exercised only once. Civil Code (1910), § 4381. The suit was originally instituted in 1913, and was renewed in 1914, and again in 1917; thus making two renewals. In these circumstances the mesne profits would be restricted to the alleged acts of trespass accruing within four years (Civil Code, § 4495) prior to the institution of the suit in 1917; and accordingly the above charge of the court was erroneous.

■ The jury, after having deliberated on the case for several hours, returned to the court-room and addressed to the judge the following inquiry: "Your honor, we would like to ask if it is necessary for an official witness to sign a deed to make it a good deed?" To this inquiry the court replied: "It is not." To this instruction the defendants except upon the ground that it was erroneous and prejudicial. Where one of the issues in the case was whether the deed from Julius Bates to John Arnett was a forgery, the proof relied on to show forgery being that the signature of the official witness of the deed was a forgery, this instruction tended to confuse and mislead the jury, and was error.

■ In the 13th ground of the motion for new trial the defendants complain that the court failed to charge the jury what the law was with reference to forgery, and how deeds could be attacked as forgeries, and what evidence was sufficient to authorize the jury to find that the deeds in question were forgeries. In the 16th

ground the defendants complain that the judge erred in that he failed to charge the jury as to the contentions of the defendants therein. These grounds of the motion are too general to present any questions to this court for decision.

■ The court charged the jury as follows: "There is one thing I inadvertently omitted, gentlemen; and that is, in order for the plaintiff to recover, that the chain of title from the State to himself must be complete. If, in the intervening links, one should be in favor of the defendant, it would vitiate the whole title." To this instruction the defendants except on the grounds that it is not a correct statement of the law applicable to the case; that it instructs the jury that though an outstanding title had been proved by the defendants, it would not avail them unless they connected themselves with it, and because the defendants had introduced in evidence the deed from Julius Bates to L. M. Montgomery, conveying the lot in dispute, which bore date prior to the date of the deed from Julius Bates and John Arnett. This charge was not erroneous or any of the reasons assigned.

■ It is contended that the court erred in charging the jury, immediately after the charge just considered, as follows: "Whether there is anything of that kind or not is not for the judge to decide, but it is for the jury. There is another principle of law that I overlooked giving you; and that is, that if in the consideration of all the evidence in the case you believe that the paramount outstanding title to the property in controversy was in some other person than the plaintiff, the plaintiff could not recover. They must recover on the strength of their own title." The errors assigned are that this instruction is not a correct statement of the law; that it confused the jury, because it failed to give them any instruction whatsoever as to what it took to constitute a paramount title, and that it left to the jury to determine what was paramount title. These objections to this instruction are without merit.

■ In the cross-bill of exceptions the plaintiff excepts to the rejection of the testimony of J. J. Bates, a witness in his behalf. This witness testified that Julius Bates was his grandfather; that E. L. Bates, M. P. Bates, N. B. Bates, C. V. Jones, and L. J. Campbell, brothers and sisters of witness, and himself were the sole surviving heirs of Julius Bates on July 21, 1913, so far as his knowledge extended; that Julius Bates left a will, a copy of which is in

the record; that he was appointed administrator de bonis non with the will annexed of Julius Bates, that he had in his possession the original plat and grant to the lot of land in dispute; that this plat and grant were found among the papers of M. M. Bates, the administrator of Julius Bates; that he afterwards mailed this plat and grant to J. A. Alexander, Nashville, Georgia, and afterwards directed Alexander to deliver them to R. A. Hendricks; that he and his brothers and sisters had sold their interest in this lot of land to P. H. Gaskins; that Julius Bates at the time of his death lived in Murray County; that as administrator de bonis non of the estate of Julius Bates he sold the lot of land in dispute to the plaintiff; and that all the next of kin and the sole surviving heirs of Julius Bates sold this land to the plaintiff. The plaintiff tendered in evidence letters of administration upon the estate of Julius Bates, appointing J. J. Bates administrator with the will annexed; the petition of J. J. Bates for such letters of administration; the petition of J. J. Bates as such administrator, praying for an order to sell this lot of land as wild and unimproved land, for the purpose of distribution among the heirs, for which purpose it was necessary to sell the same; the order of the court of ordinary of Murray County, authorizing the sale of said land for said purpose; the bond of J. J. Bates as administrator of Julius Bates; the quitclaim deed from the heirs at law of Julius Bates to the plaintiff, dated July 21, 1912; the deed from J. J. Bates, as such administrator, to the plaintiff, dated July 2, 1913, to the land in dispute; the will of Julius Bates, executed March 12, 1860, in which he devised to his wife a negro woman named Hannah to wait on and perform any services that might be necessary for his wife's welfare and maintenance, as long as she might live, and an amount from his estate sufficient for her support; and wherein he directed that the remainder of his property, consisting of lands, negroes, stock, household and kitchen furniture, be sold as the law directs, and that the proceeds and any money that testator had on hand at his death should be equally divided between all his lawful heirs, with certain exceptions. The court erred in rejecting the evidence above set out.

The plaintiff in the cross-bill of exceptions further excepts to the refusal of the court to give in charge to the jury certain in-

structions timely requested in writing. This refusal does not require a reversal.

An exception to the admission in evidence of certain marriage certificates, on the ground that it was contrary to law, presents on question for decision by this court.

*Judgment reversed on each bill of exceptions. All the Justices concur, except Russell, C. J., and Hill, J., who dissent.*